THE MAYOR AND COUNCIL OF ALBANY *v.* SIKES.

1. If, in the exercise of a power conferred by statute to erect and maintain city water-works, a municipal corporation arrests or obstructs the natural flowage of surface-water and causes it to flow upon adjacent land, whereby the market value of the land is diminished, the owner may recover compensation for this damage under that provision of the constitution which declares that private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid.

2. In view of the conflict and uncertainty in the evidence as to whether the depreciation in the value of the plaintiff's property was occasioned by the flooding incident to the erection of the water-works, and if so, to what sum the depreciation from this

cause amounted, it was error to make the grant of a new trial con-
ditional upon reducing the recovery from $1,500.00 to $300.00.
The new trial should have been granted unconditionally.

April 23, 1894.   Argued at the last term.

Action for damages.   Before Judge BOWER.   Dough-
erty superior court.   April term, 1893.

WOOTEN & WOOTEN, for plaintiff in error.

W. T. JONES and S. J. JONES, *contra*.

LUMPKIN, Justice.

1. Before the ratification of the present constitution
of this State, the owner of private property actually
taken for public use was undoubtedly entitled to com-
pensation; but where such property was merely dam-
aged in the prosecution of a public work, it was *damnum
absque injuria.*   Our constitution now provides that:
" Private property shall not be taken, *or damaged,* for
public purposes, without just and adequate compensa-
tion being first paid." Code, §5024.   Const. art. 1, §3,
par. 1.   It follows that where a municipal corporation,
in the exercise of a statutory power authorizing it to
erect and maintain city water-works, in so doing in-
jures or damages the private property of a citizen, that
corporation will be liable to make compensation in
damages, if an individual would be liable for causing
injuries or damages of the same kind.   In connection
with all that is said above, see *Smith* v. *Floyd county,* 85
*Ga.* 420.

Construing so much of the declaration as was left
after a portion of it had been stricken on demurrer,
together with the evidence offered by the plaintiff in
support of her cause of action, the main question pre-
sented for our consideration is : can she recover from
the Mayor and Council of Albany compensation for
arresting or obstructing the natural flowage of surface-
water and causing it to flow upon her land, thereby di-
minishing the market value of her property?   The evi-

dence tends to show that, before the erection of the city water-works, the lot upon which the reservoir now stands was more elevated than that of the plaintiff, and that consequently, rain-water falling upon the upper lot ran down upon the lot of the plaintiff; but that since the erection of the water-works, rain-water which fell upon other land, and ran upon and was more or less absorbed by the present city lot, has been diverted from it and caused to overflow the plaintiff''s lot, so that it now receives a much greater quantity of surface-water than it did before. Whether the city is liable for this increased flowage of surface-water upon the plaintiff''s land depends upon whether or not we adopt what is known as the " common law rule," or the "civil law rule," bearing upon the subject of surface-water.

According to the rule of the, common law, surface-water, like the waters of the sea, was regarded as a common enemy, and it was the right of any land-owner to expel it from his own land without regard to the injury which might thereby be occasioned the proprietor of a lower estate. By the rule of the civil law, while the lower proprietor is bound to receive the surface water which naturally flows from the estate above, the owner of the latter has no right, by diverting surface-water which he ought to receive from an estate above his own and to which his estate is servient, thus to relieve his own estate of the servitude which nature placed upon it, and cast the whole burden upon the estate of his neighbor below. It is not our present purpose to discuss at length the merits of these two conflicting rules. They have been stated and discussed by numerous judges in many of the courts of this country, and any one desiring to pursue the investigation will find the sources of information indicated in the authorities below cited. According to Gould, the rule of the common law has been accepted in Massachusetts, Maine, Ver-

mont, New York, New Hampshire, Rhode Island, New
Jersey, Michigan, Minnesota and Wisconsin; that of
the civil law in Pennsylvania, Illinois, North Carolina,
Alabama, Tennessee, California and Louisiana, and has
been referred to with approval by the courts of Ohio
and Missouri. Gould on Waters (2d ed.), §§265, 266.
Perhaps a majority of the American States have adopted
the civil law rule. In *O'Connell* v. *East Tenn., Va. &
Ga. Ry. Co.*, 87 *Ga.* 246, many of the cases bearing
upon this question are referred to. This case is also
reported and annotated in 13 Law. Rep. An. 394, and
in the notes a large number of pertinent cases may be
found cited. See, also, Washb. Easm. & Serv. (4th ed.)
pp. 23, 485 *et seq.*; Moak's Underhill on Torts, 457–478,
and 712–714; Martin v. Jett, 12 La. An. 501, s. c. 32 Am.
Dec. 120. An examination of the cases of Ogburn *v.*
Connor, 46 Cal. 346, and McDaniel *v.* Cummings, 83 Cal.
515, will show that the Supreme Court of that State,
while endeavoring in the former case to state the com-
mon law rule, really stated the rule of the Roman civil
law; and in the latter case, notwithstanding the error
thus committed, allowed the civil law rule to prevail on
the doctrine of *stare decisis*. In Livingston *v.* McDon-
ald, 21 Iowa, 160, s. c. 89 Am. Dec. 563, that eminent
jurist, Judge Dillon, said, in discussing a similar ques-
tion then involved, that : "It would be inexcusable to
overlook the doctrines of the civil law respecting it.
That law, embodying the accumulated wisdom and expe-
rience of the refined and cultivated Roman people for
over a thousand years, though not binding as authority,
is often of great service to the inquirer after the princi-
ples of natural justice and right." In the note to Mar-
tin *v.* Jett, found in 32 Am. Dec., *supra*, the common
law rule is spoken of as the law of force, and the civil
law rule as the law of justice. We concur in this view,
and for this reason have followed the latter rule.

Our only reason for doubting which rule we ought to follow is the fact that so much of the common law of England as was in force in the Province of Georgia prior to May 14, 1776, and which was then applicable to the condition and habits of our people and consonant with our form of government, is still, except in so far as the same has been expressly repealed, modified or superseded, a part of the law of this State; and therefore we were not quite certain that the rule in question is not binding upon us as a portion of our system of laws derived from the mother country. After a careful, diligent, and somewhat extensive, though not completely exhaustive, search among the old English reports and law-writers, we have been unable to find any distinct, clear and definite statement of what was, at the time above mentioned, the common law applicable to the precise question involved in the present case. We are, perhaps, perfectly safe in saying that there was not in England, prior to the beginning of the American Revolution, any such authoritative announcement, judicial or otherwise, of the rule concerning surface-waters now insisted upon by counsel for the plaintiff in error, as to make the same binding upon us. If there was then such a rule at common law, it certainly has never yet been established and recognized in Georgia, and we doubt exceedingly if it would be applicable to the condition and habits of our people, or adapted to the true spirit and genius of our institutions. Our declared constitutional policy, as already shown, is to require compensation to be made for injuries inflicted. The growth of this policy is evidenced by the trend of our legislation for many years, and the corresponding modification of judicial opinion. In view of these things, we do not care now to turn backwards, and there is nothing, we think, which prevents our following as the true law of this State the rule of the civil law, it being, of the two,

the sounder, the more consistent with natural justice and right, and the more in harmony with our system of law and the general conditions of the commonwealth of this State.

In the case of *Phinizy* v. *City Council of Augusta*, 47 *Ga.* 260, the plaintiff alleged that the city had injured his land by introducing within the corporate limits, by means of a canal, water for manufacturing purposes, and then turning this water into artificial drains so as to increase the amount of water flowing upon his land; and it was held that the city was liable. The question as to the liability of the city for causing surface or rain-water to be thrown, through these drains, in a concentrated stream upon the land of the plaintiff, was also, to some extent, involved in the case. There seems to have been a difference of opinion as to the law relating to surface-water, between Judges McCay and Montgomery on the one side, and Chief Justice Warner on the other. We are decidedly of the opinion that the views entertained by the latter were correct. Indeed, most of the authorities follow the doctrine that, even as to surface-water, one landed proprietor has no right to concentrate and collect it, and thus cause it to be discharged upon the land of a lower proprietor in greater quantities at a particular locality, or in a manner different from that in which the water would be received by the lower estate if it simply ran down upon it from the upper by the law of gravitation. The case of *Goldsmith* v. *Elsas, May & Co.*, 53 *Ga.* 186, is not precisely in point for our present purpose, but it recognizes the rule that the lower of two city lots owes a servitude to the higher, so far as to receive the water which naturally flows therefrom, but the owner of the higher lot has no right to increase such flow by artificial means.

We wish to be understood as ruling in the present case that the only compensation to which the plaintiff

would be entitled, under the circumstances, is for the damage (if any) arising from the alleged increased flow of surface-water to which the defendant has subjected her lot, and the consequent diminution of the market value of the same. If we correctly understand the case as presented, such is, indeed, the only compensation which the plaintiff seeks to recover.

2. The jury found for the plaintiff the sum of $1,500. The court ordered that a new trial be granted unless, by writing off, the recovery be reduced to $300. There was a decided conflict in the evidence as to whether the depreciation in the value of the plaintiff's property was occasioned by any increased flooding resulting from the erection of the water-works; and if so, to what sum the depreciation from this cause amounted. The evidence did not, in any view, warrant any fixed and absolute conclusions upon these questions, but left the proper determination of them in such uncertainty that the solution of them was peculiarly a matter for the jury, and not one for the judge. It is evident the judge was dissatisfied with the finding of $1,500, and that he would not in any event have permitted a recovery for this amount to stand. Upon the question of granting or refusing a new trial without condition or qualification, he undoubtedly would have set the verdict aside. The granting of a new trial generally would have met the full approval of this court; and looking at the verdict rendered as one which ought not to be sustained, as the court below evidently did, we think, under the circumstances, a new trial should have been granted absolutely and without condition.

This case, as to the point now under consideration, is not like that of the *Augusta Railway Co.* v. *Glover*, 92 *Ga.* 134, 18 S. E. Rep. 406. There, the value of a life was involved, and it was capable of being ascertained with some degree of certainty. It could, at least, be

shown that, under the evidence most favorable to the plaintiff, a verdict beyond a certain amount would be necessarily excessive. The ruling in that case was simply to the effect that if the plaintiff, by writing off, voluntarily relinquished all of the recovery which could certainly be treated as excessive, the amount of the verdict, after this was done, would no longer be a cause for a new trial.        *Judgment reversed.*