Angie H. Hume, Appellant, v. City of Des Moines, Appellee.

**Municipal corporations:** GRADING OF STREETS: NEGLIGENCE IN FAILING TO PROVIDE DRAINAGE: LIABILITY OF CITY. A city having power to grade its streets is not liable for defective plans for performing the work, since, in the adoption of the same it acts in a judicial capacity. But in bringing a street to the grade the city is bound to exercise reasonable care and prudence, and if it unnecessarily or negligently fills ditches or drains in the street and thus casts the surface water back on an adjacent lot, without notice to or knowledge of the owner, and without giving the owner a reasonable time to bring his lot to the grade, the city is liable because of its negligence in performing a purely ministerial act. And where there is evidence tending to show negligent performance of the work in failing to make temporary provision for the flow of surface water, thus causing it to back up onto plaintiff's lot, the question of negligence is for the jury.

*Appeal from Polk District Court.*—Hon. Jesse A. Miller, Judge.

Tuesday, April 5, 1910.

ACTION at law to recover damages due to the backing up of surface water in such a manner as to injure plaintiff's premises. The injuries are alleged to have been due to the carelessness and negligence of the city in casting cinders and refuse of different kinds into a culvert and drain in such a manner as to impede the flow of surface water and dam it up so that it flowed back upon plaintiff's premises and produced the injuries of which she complains. At the conclusion of plaintiff's evidence, the trial court directed a verdict for defendant, and plaintiff appeals.— *Reversed.*

*Hume & Hamilton,* for appellant.

*R. O. Brennan* and *J. M. Parsons,* for appellee.

DEEMER, C. J.—Plaintiff is the owner of what is known as lot seven of the official plat of lots one, two, three, and four in block forty-two of J. Lyons' addition to Ft. Des Moines, now within the corporate limits of the city of Des Moines. This lot is thirty-three feet in width east and west and sixty-eight feet in depth north and south. It faces north on West Walnut street, and between it and West Fifteenth street are six lots of equal width and an alley. On the south is an elevated embankment and the right of way of the Des Moines Union Railway Company. Toward the west and the width of another lot of equal dimensions is West Sixteenth street. All these streets are regular public highways of the city. Plaintiff's premises slope from the northeast to the southwest; the southwest corner of the lot being from ten to fifteen feet lower than the northeast corner. Prior to the injuries complained of, surface water falling upon said lots and upon parts of West Walnut and West Fifteenth streets flowed naturally and uninterruptedly across plaintiff's lots and found exit at the southwest corner thereof, and, by,

means of a ditch along the railway embankment running westward, the surface water coming from the lot ran westward until it came to a drain tile or pipe passing through the railroad embankment, from whence it ran across the right of way and upon the bottoms south of said right of way into the Raccoon River. Where West Sixteenth street running south met the railway embankment, there was a plank bridge under which the water coming westward along the railway embankment flowed, and just west of this bridge and in Sixteenth street was the opening of the drain tile which passed under and through the railway embankment. This ditch along the railway embankment also extended westward from the opening of the drain tile so that it carried away any excess of water which could not get through the eighteen-inch tile. The surface of plaintiff's lot was something like ten or fifteen feet lower than the top of the pavement at Fifteenth and Walnut streets, and no part of the same had ever been brought to grade. Surface water on Walnut street flowed westward from Fifteenth to Sixteenth street, and when it reached Sixteenth flowed southward to the railway tracks and into the ditch before described. In the year 1872 the defendant city established a grade for West Walnut street from a point ninety-nine feet east of Fifteenth street to a point sixty-six feet west of Fifteenth street; the former point being forty-three feet and the latter twenty-six and forty one hundredths feet above the datum point. The grade at the intersection of West Walnut and Sixteenth streets was not established until the year 1897, when it was fixed at twenty-four feet above the datum line, and in the same year the grade of West Sixteenth street at its intersection with the Des Moines Union Railway tracks was fixed at twenty-three feet above the datum line. Plaintiff's lot is so located that no grade was established either of Walnut street to the north or of West Sixteenth street to the west until the year 1897.

The house on plaintiff's premises was erected in the year 1895, as were other houses both east and west thereof.

In the spring or summer of the year 1907, the defendant city undertook to bring the surface of West Walnut to the north of plaintiff's property, and of West Sixteenth to the west thereof, to the established grade, and, pursuant thereto, hauled in and dumped dirt, ashes, street sweepings, and other refuse, raising the middle of the street something like four or five feet, but leaving hollows or ditches some ten or twelve feet in width around the block in which plaintiff's premises are located between the fill in the street and the lot lines. In so doing it filled up the space under the bridge crossing the ditch along the railway embankment, and the opening to the tile drain was buried several feet with ashes, cinders, and refuse. This left lot seven, as well as other lots in the same block, surrounded by embankments several feet higher than the surface of the ground, and no method was preserved either temporary or permanent for the escape of surface water. In July and August of the year 1907 there were several heavy rainfalls, and, there being no escape for the water as it accumulated upon the streets and the lots in the block in which plaintiff's property is located, it made a large pond, which covered the surface of plaintiff's lot and of lots adjoining to the depth of two or three feet, causing the injuries of which plaintiff complains. These injuries were shown to be serious and substantial, and no question is now made but that plaintiff, if entitled to anything, has shown a situation which entitles her to something more than nominal damages. The petition charges that "said embankment was negligently and carelessly constructed, in that it hindered, obstructed, and prevented access to plaintiff's property aforesaid and to the alley thereto adjacent; in that it cut off and destroyed the natural drainage and outlet to the surface water aforesaid; in that it dammed up the ditch and filled the drain pipe or tile

above described, and created a reservoir or large pond of stagnant water on and about the plaintiff's premises; and in that the defendant made no provision of any kind, either temporary or permanent, for the escape of said water, or for diverting the flow thereof before the same entered plaintiff's property, although the defendant at the time well knew, or, in the exercise of reasonable care, should have known, the topography of the land, the elevation of said lot, the outlet of said natural water course and drainage, and the damage to plaintiff's property that would inevitably result from its failure to provide an escape for said water."

The case presents the old, yet ever new, question of the liability of a city or municipal corporation for damming up or otherwise obstructing the flow of surface water to the injury and damage of abutting property, especially where that property is below the established grade. There is a hopeless conflict in the cases upon this proposition, and our own decisions upon the subject are not as harmonious as we might wish. It has been broadly asserted in many cases that, as surface water is a common enemy, a city may bring its streets to grade by filling or excavating, and thus obstruct or impede the flow of surface water, damming it back, and causing it to collect upon abutting property without liability for damages, particularly where the abutting or adjoining property is below the established grade. In jurisdictions where this doctrine prevails, the common-law rule obtains, which is to the effect that as to surface water pure and simple there is no such thing as dominant and servient estates. See, as sustaining this rule, the following, among other, cases: *Corcoran v. City,* 96 Cal. 1 (30 Pac. 798, 31 Am. St. Rep. 171); *Henderson v. City,* 32 Minn. 319 (20 N. W. 322); *Stewart v. City,* 79 Mo. 612; *Clark v. City,* 5 Har. (Del.) 244; *Pettigrew v. Village,* 25 Wis. 223 (3 Am. Rep. 50); *Hoyt v. City,* 27 Wis. 656 (9 Am. Rep. 473); *Lynch*

*v. Mayor,* 76 N. Y. 60 (32 Am. Rep. 271); *Bowlsby v. Speer,* 31 N. J. Law, 351 (86 Am. Dec. 216); *Jessup v. Ramfud Bros.,* 66 N. J. Law, 641 (51 Atl. 147, 58 L. R. A. 329, 88 Am. St. Rep. 502); *Dickinson v. Worcester,* 7 Allen (Mass.) 19; *Chatfield v. Wilson,* 28 Vt. 49; *Waffle v. N. Y. Cent. R. R.,* 58 Barb. (N. Y.) 413; *Lampe v. City,* 124 Cal. 546 (57 Pac. 461, 1001).

The rule in England, as will be hereafter observed, is somewhat in doubt. See *Earl v. De Hart,* 1 Beas. 280. In other jurisdictions where the civil law obtains, the rule as to individuals is exactly the opposite, and the lower proprietor is held liable for damming back and obstructing the natural flow of surface water. *Nevins v. City,* 41 Ill. 502 (89 Am. Dec. 392); *Kaufman v. Griesmer,* 26 Pa. 407 (67 Am. Dec. 437); *Martin v. Riddle,* 26 Pa. 415; *Gillham v. Madison R. R.,* 49 Ill. 484 (95 Am. Dec. 627); *Laumier v. Francis,* 23 Mo. 181; *City v. Baker,* 65 Ill. 518 (16 Am. Rep. 591); *Bulter v. Peck,* 16 Ohio St. 334 (88 Am. Dec. 452); *Livingston v. McDonald,* 21 Iowa, 160; *City of Aurora v. Reed,* 57 Ill. 29 (11 Am. Rep. 1). But in some of these jurisdictions adopting the rule of the civil law, an exception has been made as to cities and towns. There both the lot owner and the city have been permitted to obstruct or repel surface water without liability for injury. See *Bentz v. Armstrong,* 8 Watts & S. (Pa.) 40 (42 Am. Dec. 265); *Livingston v. McDonald, supra; Stewart v. City,* 79 Mo. 612; *Los Angeles Ass'n v. City,* 103 Cal. 461 (37 Pac. 377). But even where the common-law rule obtains, individuals, railway companies, and cities have been held liable for the obstruction and damming up of surface water. Thus, in *Waterman v. Railway Co.,* 30 Vt. 610 (73 Am. Dec. 326), it is said: "That a railroad company may, as a question of prudence and care, as well be required to have regard to the prevention of damage to a landowner, by the accumulation of surface water merely,

as of a running stream, when the geographical formation and surrounding circumstances are such as to make it apparent to reasonable men that such precautions are necessary, and that ordinarily what would be a reasonable performance of that duty under a given state of circumstances would be a question of fact, and not a question of law for the court." See, also, *West Orange v. Field,* 37 N. J. Eq. 600 (45 Am. Rep. 670).

In *Sheehan v. Flynn,* 59 Minn. 436 (61 N. W. 462, 26 L. R. A. 632), a Minnesota case, it was held that, although the common-law doctrine obtained in that state, one could not unnecessarily or unreasonably use his own property to the injury of another, and that, while at common law surface water is a common enemy which each owner may get rid of as best he may, he can not carelessly, negligently, and unnecessarily injure his neighbor in so doing. From that case we make the following quotation:

The common-law rule as to liability for the diversion of surface water has been modified in this and other states by the rule that a person must so use his own as not unnecessarily or unreasonably to injure his neighbor. A circumstance to be considered in determining what is reasonable use of one's own land is the amount of benefit to the estate drained or improved, as compared with the amount of injury to the estate on which the burden of surface water is cast. *Hughes v. Anderson,* 68 Ala. 288 (44 Am. Rep. 147). 'But the extent to which any proprietor may go in these and other ways, in incidentally, while improving his own land, turning the surface water of his own land off on the lands of others, must, in each case, be determined by the degree of comparative injury it may produce and relieve.' Ray, Negligence of Imposed Duties, 301. The benefit in this case will be the redeeming of twenty acres of fine agricultural land, and the restoring of this highway, while the injury will be the submerging, for some time in the spring, of an acre or two of such land as is found along the shore of such a lake. It seems to us that the extent to which the com-

mon law is thus modified is well expressed in the case of *O'Brien v. St. Paul,* 25 Minn. 335 (33 Am. Rep. 470), where it is said: 'It (surface water) has been called a common enemy, which each owner may get rid of as best he may; and some cases—not a few, indeed—maintain the owner's right to adopt any means he may choose to prevent it coming on his land, or to turn it off from his land, without regard to the consequences which may ensue to others. These cases are founded on an owner's assumed right to do absolutely what he will with his own. This right, however, is somewhat restricted by the maxim that 'a man must so use his own as not unnecessarily to do injury to another'—a maxim which grows out of the necessities of society, and without which society would be hardly possible. A man's right to use his property is restricted, for instance, to the manner in which such property is ordinarily used.' Again, on page 336 of 25 Minn. (33 Am. Rep. 475), it is said: 'Although we are not prepared to say that in no case can an owner lawfully improve his own land in such a way as to cause the surface waters to flow off in streams upon the land of another, we do not hesitate to say that he may not turn the water, in destructive currents, upon the adjoining land. . . . From the complaint, there does not appear any necessity, in grading the avenue, to collect the water at the point indicated, nor any difficulty in conducting it off without injury to private property.' This is a reasonable doctrine that takes into consideration all the circumstances of each case. It gives each man the common-law right to improve and enjoy his own property to its fullest extent, but limited by the requirement that he use reasonable care in disposing of surface water, which the common law did not always require him to do. When he has used such reasonable care, he can generally stand on his common-law rights, whether such surface water injures his neighbor or not. . . .

But in the *Hogenson* case the defendant not only collected and deposited on the flat prairie the water which was necessarily so collected and deposited in draining its roadbed, but also the water in the swamp for three miles away from the roadbed. It did not do so for the purpose of improving the swamp, or making any use of it, but merely because it was somewhat more convenient

to deposit the swamp water and the roadbed water all together on the prairie than to construct a ditch so that it would deposit only the roadbed water. It not only collected the water that was necessary in draining its road, but also the water in the swamp. It collected more than was necessary to drain its land, and was not acting in a reasonable manner, and for this should be held liable. The criterion of reasonable necessity should be held controlling in the law of surface water, both for and against the owner of the estate improved, and if the railroad company could reasonably have constructed its ditch leading away from its road, so as to collect less water from the swamp, it was its duty to do so. But in our opinion it should not have been held liable for collecting and discharging on the flat prairie the water necessary to be discharged in draining its roadbed. It must discharge this water somewhere. If there was a natural drain within some reasonable distance, into which it could have discharged it, then it was its duty so to do. But if there was no such natural drain, it became a question of necessity. It was not obliged to abandon its road. The water must be discharged, and must necessarily become the common enemy which the common law calls it. In such a case every man has the right to get rid of it as best he can, and the only remedy is a public system of drainage, which the public, and not the individual owner, must inaugurate. . . .

We hold that one has a right to drain his land for any legitimate use, whether for a railroad track, a wheat field, or a pasture, and whether the improvement is directly and wholly for the purpose of drainage, or whether it is for some other purpose, and such drainage is a mere incidental result. But, if he collect and convey the surface water off his own land, he shall do what is reasonable, under all the circumstances, to turn it into some natural drain, or into some course in which it will do the least injury to his neighbor, . . . and, if he would prevent it from coming upon his land, he must not do so by obstructing some natural drain, and thereby hold back the water and flood the land of his neighbor, at least, if such natural drain is an important one.

One of the clearest statements of the rules as an-

nounced by the authorities is found in *Jordon v. City,* 42 W. Va. 312 (26 S. E. 266, 36 L. R. A. 519, 57 Am. St. Rep. 859), from which we quote the following:

Another question is: Suppose the change of grade of a street prevents the surface water from flowing away from the land—dams it up even—is the municipal corporation liable for damages to the landowner? Answering this question, we meet with a volume of legal authority, and apparently very variant. There are two rules, one called the 'civil-law rule,' and the other the 'common-law rule,' though it seems it did not originate in England. Most of our states have adopted, as the basis of decision in the main, the common-law rule, but some have adopted the civil-law rule as the more just and logical. The civil-law rule is expressed in the Code Napoleon thus: 'The owner of the lower ground is bound to receive from the higher ground the water which naturally flows down without the human hand contributing to its course. The owner of the lower ground is not permitted to make a dike to prevent such flowing. The owner of the higher ground can do nothing to aggravate the servitude or easement of the lower ground.' (Section 640.) Under this law, neither of these owners can stop surface water. Very different is the common-law rule. It says that each owner may fight surface water as he chooses. He may use it all, divert it away from the lower land, may prevent its invasion of his own land, and thus dam it up on his neighbor's land. He may, in the use of his land, cause it to flow differently upon his neighbor's from what it did before. Gould, Waters, section 263, very clearly states the basic principle thus: 'Water spread over the surface land, or gathering in natural depressions, or into swamps, or bayous, or percolating the soil beneath the surface, if flowing in no definite channel, does not constitute a water course, and is not subject to the principles of the law regulating the rights of riparian owners. . . . By the common law no rights can be claimed *jure naturae* in the flow of surface water, and its detention, expulsion, or diversion is not an actionable injury, even when injury results to others.' 24 Am. & Eng. Enc. Law, 907, 917; extended note, *Gray v. McWilliams,* 21 L. R. A.

593 (98 Cal. 157, 32 Pac. 976, 35 Am. St. Rep. 163);
2 Dillon Mun. Corp., section 1039; 3 Minor, Inst. 18;
*Bowlsby v. Speer,* 31 N. J. Law, 351 (86 Am. Dec. 216);
Washburn, Easements, 489, 495, 499; *Martin v. Jett,* 12
La. 501 (32 Am. Dec. 120), and valuable full note on
page 123; *Albany v. Sikes,* 94 Ga. 30 (20 S. E. 257,
26 L. R. A. 653, 47 Am. St. Rep. 132). The common-
law rule recognizes the old maxim respecting ownership
of real property, and is based on it: *'Cujus est solum,
ejus est usque ad coelum.'* Any other rule would be
a restraint upon ownership. Without it a man building
houses, walls, or fences, or even in works of agriculture,
would be open to constant assault. Of course, it is to
be so applied as not to violate reason. The common-law
rule has been recognized as applicable to the mother state
of Virginia in *Norfolk & W. R. Co. v. Carter,* 91 Va.
587 (22 S. E. 517). There is no pointed West Virginia
case; but *Gillison v. Charleston,* 16 W. Va. 282 (37 Am.
Rep. 763), and *Knight v. Brown,* 25 W. Va. 808, recog-
nize the general rule inferentially. By some cases it
has been more rigidly applied to the exemption of the lot
owner using his lot as he pleases, and municipal corpora-
tions, than as to country lands; but the better thought is
that the rule is the same in both cases. Therefore the
city of Benwood would not be liable for obstructing the
flow of surface water from this lot in raising the street
grade, if the work was done without negligence, and doing
its work with reasonable skill, in the usual way of doing
such work, and the damage a mere incident of the work.
2 Dillon, Mun. Corp., section 1051.

Another question is: Is the city liable for surface
water which its work for the first time brought upon the
plaintiff's lot from other premises than hers? Here we
meet with some trouble. There are various and variant
decisions, even where the common or civil law rule pre-
vails. The city is engaged in lawful work on its own
ground, and it happens that from it some surface water
is changed in its course, and thrown on another's lot, thus
increasing the quantity on that lot. This is not actionable,
but *damnum absque injuria,* where the common-law rule
holds just the contrary to the civil-law rule, which, as
above quoted, says that 'the owner of the higher ground
can do nothing to aggravate the servitude or easement of

the lower ground.' If you logically apply the common-law rule, you must say that if, in the use of his land, one stops surface water in its natural course, and turns it in another direction, whereby it goes upon land of another as it never had done before, yet there is no right of action for this, because the letter of the common-law rule is that surface water is, like waters of the sea, an enemy, which each may fight, and which he may consume, repel, or expel, without regard to any injury thereby occasioned to another proprietor. *Albany v. Sikes,* 94 Ga. 30 (20 S. E. 257, 26 L. R. A. 653, 47 Am. St. Rep. 132); note in *Kansas City, M. & B. R. Co. v. Smith,* 48 Am. St. Rep. 588 (72 Miss. 677, 17 South. 78, 27 L. R. A. 762); *Missouri P. R. Co. v. Keys,* 55 Kan. 205 (40 Pac. 275, 49 Am. St. Rep. 249), and note, 253. Here we meet two fundamental maxims of the law, old as the centuries, in regarding which the courts have given a wilderness of conflicting decisions, often governed by the particular cases before them, and, indeed, in presence of these maxims, courts can do little better. The effect of one of these maxims is: 'He who owns the soil owns it down to the center of the earth and up to the skies.' That is, he has complete and perfect dominion. The effect of the other maxim is: 'So use thine own that thou dost not injure another.' I repeat that if one, in using his own land, diverts surface water from its usual course, and it turns upon another's land, where it never before has gone, no action lies, where the common-law rule prevails. He has the right to shut out surface water, thus casting it back on his immediate neighbor, and, if it goes from him to visit another whom it never knew before, it is no matter. 24 Am. & Eng. Enc. Law, 907, 917; authorities last above cited; Gould, Waters, sections 267, 268; Washburn, Easements (4th Ed.), 494; Angell, Water Course, section 108a; *Lynch v. New York,* 76 N. Y. 60 (32 Am. Rep. 271); *Gannon v. Hargadon,* 10 Allen (Mass.) 106 (87 Am. Dec. 625), and note; *Atchison, T. & S. F. R. Co. v. Hammer,* 22 Kan. 763 (31 Am. Rep. 216); *O'Connor v. Fond du Lac, A. & P. R. Co.,* 52 Wis. 526 (9 N. W. 287, 38 Am. Rep. 754). But this rule seems harsh, applied without limitation, and even where the common-law rule was the basis or standard of decision, an exception was recognized. While recognizing the right of

the owner of the higher field or lot to throw his surface water upon the lower, even if, in the use of his land, it changed or increased the flow upon the lower field or lot, yet it must not be collected in a body, and in such body or mass cast upon that lower field or lot. So say our cases of *Gillison v. Charleston,* 16 W. Va. 282 (37 Am. Rep. 763), and *Knight v. Brown,* 25 W. Va. 808. So says the civil law, as we have seen. So say many authorities even where the common law is adopted. *Norfolk & W. R. Co. v. Carter,* 91 Va. 587 (22 S. E. 517), opinion, and cases cited. If, from one's own use of his land, surface water naturally flows in different directions or quantity upon another's land, as a mere consequence or result of such use, no actionable injury is done; but he has no right to 'collect the water in artificial channels, and discharge it. . . . on . . . an adjoining proprietor. This is alike the rule of the common and civil law; and a municipal corporation has no greater right in this respect than a private landowner'—is the rule stated in Gould, Waters, section 271. In *Field v. West Orange Tp.,* 36 N. J. Eq. 118, admitting the general common-law rules as to surface water, it was held that 'a town can not discharge water drainage from the surface of its streets on private lands in such quantities as to impair · value and use of them.' There they conducted the water by new channels in unusual quantity. 'Cities and towns have no greater rights than individuals to collect in artificial channels upon their streets and highways mere surface water, distributed in rain and snow over large districts, and precipitate it upon the premises of private owners, or to construct ditches upon private lands for public uses without ·compensation. A municipal corporation is liable for throwing water, collected in large quantities in a street, or ·in the gutter of a street, upon land of a private owner'— says Gould, Waters, section 272, on the authority of many cases. Judge Cooley, in his work on Torts (page 580), cited in *Gillison v. Charleston,* 16 W. Va. 302 (37 Am. Rep. 763), says the same—that while towns are not compelled to make gutters to protect owners against surface water from public ways, yet, if they actually construct such as must carry water on adjacent lands, they are as much liable as if they had sent their servants upon them. 'One proprietor has no right to cause a flow of surface

water from his land over that of his neighbor by collecting it in drains, culverts, or artificial channels'—says Angell, Water Courses, section 108. 24 Am. & Eng. Enc. Law, 549; 2 Dillon, Mun. Corp. section 1042, and note; opinion in *Lynch v. New York,* 76 N. Y. 60 (32 Am. Rep. 271). See, especially 2 Dillon, Mun. Corp., section 1051. This exception needs to be emphasized, because it is a logical exception to the generality of its application, and essential to bar it from sheltering many instances of injustice. These doctrines apply where the water goes to other land where it did not go before, as will be seen from some of the authorities. Angell, Water Courses, section 108 *et seq.* I do not understand this case as falling under this exception. The same rules apply to a municipal or railroad corporation as to an individual. Opinion in *Norfolk & W. R. Co. v. Carter,* 91 Va. 587, 592 (22 S. E. 517); Gould, Waters, section 272; *Lynch v. New York,* 76 N. Y. 60 (32 Am. Rep. 271); 2 Dillon, Mun. Corp., section 1051. If a city, in changing grade, causes water collecting on its streets, flowing therefrom merely as surface water, to go on adjoining land, it is not liable for damages. Gould, Waters, section 269.

From what has been said, it is apparent that some courts have adopted what is called the "modified common-law doctrine," while others, professing to adhere to the rule of the civil law, have modified it in its application to cities and towns and for all practical purposes have established the modified common enemy doctrine of the common law. But it is not strictly true that at common law one may do what he will with surface water. The maxim, *"Sic utere tuo ut alienum non laedas,"* has been held applicable to such cases. Thus, in the *Livingston* case, which established the law of this state as to rights of individuals to obstruct the flow of surface water, it is said, after referring to the maxim already quoted: "We recognize the fact (to use Lord Tenterden's expression) that surface water or slough water is a common enemy which each landowner may reasonably get rid of in the best manner possible; but in relieving himself he must

respect the rights of his neighbor, and can not be justified by an act having the direct tendency and effect to make that enemy less dangerous to himself and more dangerous to his neighbor.  He can not make his estate more valuable by an act which unnecessarily renders his neighbor's less valuable."

Again, in *City of Beatrice v. Leary,* 45 Neb. 149 (63 N. W. 370, 50 Am. St. Rep. 546), the Supreme Court of Nebraska, while announcing the common enemy doctrine of the common law, said that this rule is also subject to another common-law rule that a proprietor must so use his own property as not to unnecessarily and negligently injure his neighbor.  We quote the following from that opinion:

And therefore every proprietor may lawfully improve his property by doing what is reasonably necessary for that purpose, and, unless guilty of some act of negligence in the manner of its execution, will not be answerable to an adjoining proprietor, although he may thereby cause the surface water to flow on the premises of the latter to his damage.  But if, in the execution of such enterprise, he is guilty of negligence which is the natural and proximate cause of injury to his neighbor, he is accountable therefor.  *Railroad Co. v. Sutherland,* 44 Neb. 526 (62 N. W. 859), and cases there cited.  The city had the right to grade and pave Court street.  It had the undoubted right to fill the ditch therein, and to dike or dam the draw that emptied into said ditch.  In other words, it had the right to take such steps und perform such acts as, in its judgment, were necessary to protect its street from surface waters; but, while it had this right, it was charged with the duty of exercising it with ordinary care.  It knew, and was bound to know, that this draw was the natural conduit from which the surface waters from a large area of surrounding country were wont to find their way to the Blue River; and when it diked this draw at Court street, and filled up the ditch in said street, it was charged with the duty of constructing sufficient ditches and outlets to carry the surface waters coming down said draw to the river.

The Supreme Court of Virginia, in *Norfolk v. Carter*, 91 Va. 587 (22 S. E. 517), said: ·

This right in regard to surface water, may not be exercised wantonly, unnecessarily, or carelessly, but is modified by that golden maxim of the law that one must so use his own property as not to injure the rights of another. It must be a reasonable use of the land for its improvement or better enjoyment, and the right must be exercised in good faith, with no purpose to abridge or interfere with the rights of others, and with such care with respect to the property that may be affected by the use or improvement as not to inflict any injury beyond what is necessary. Where the exercise of the rights is thus guarded, although injury may result to the land of another, he is without remedy. Lewis, Eminent Domain, section 585; Washburn, Easement (3d Ed.), 455; *Swett v. Cutts*, 50 N. H. 439 (9 Am. Rep. 276); *Railroad Co. v. Wicker*, 74 N. C. 220; *Beard v. Murphy*, 37 Vt. 99 (86 Am. Dec. 693); *Railroad Co. v. Chapman*, 39 Ark. 463 (43 Am. Rep. 280); *Abbot v. Railroad Co.*, 83 Mo. 271, 53 Am. Rep. 581); *Taylor v. Fickas*, 64 Ind. 167 (31 Am. Rep. 114); *Railroad Co. v. Hammer*, 22 Kan. 763 (31 Am. Rep. 216); 24 Am. & Eng. Enc. Law, 920. The right, thus modified, has also its exceptions. One exception is that the owner of the land can not collect the water into an artificial channel or volume and pour it upon the land of another, to his injury. The right to fend off surface water does not extend that far. *Davis v. City of Crawfordsville*, 119 Ind. 1 (21 N. E. 449, 12 Am. St. Rep. 361); *City of Evansville v. Decker*, 84 Ind. 325, 43 Am. Rep. 86); *Railroad Co. v. Stevens*, 73 Ind. 278 (38 Am. Rep. 139); *Patoka Tp. v. Hopkins*, 131 Ind. 142 (30 N. E. 896, 31 Am. St. Rep. 417); *Rychlicki v. City of St. Louis*, 98 Mo. 497 (11 S. W. 1001, 4 L. R. A. 594, 14 Am. St. Rep. 651); *Railroad Co. v. Marley*, 25 Neb. 138 (40 N. W. 948, 13 Am. St. Rep. 482); *Chalkley v. City of Richmond*, 88 Va. 402 (14 S. E. 339, 29 Am. St. Rep. 730); 2 Dillon, Mun. Corp., section 1051; Gould, Waters, section 271. Another exception to the right, which pertinently applies to this case, is that the owner of the land can not interfere

with the flow of surface water in a natural channel or water course. Where the water has been accustomed to gather and flow along a well-defined channel, which by frequent running it has worn or cut into the soil, he may not obstruct or divert it to the injury of another. *Earl v. De Hart,* 12 N. J. Eq. 280 (72 Am. Dec. 395); *Railroad Co. v. Chapman,* 39 Ark. 463 (43 Am. Rep. 280); *Gibbs v. Williams,* 25 Kan. 214 (37 Am. Rep. 241); *Palmer v. Waddell,* 22 Kan. 355; *Rowe v. Railroad Co.,* 41 Minn. 384 (43 N. W. 76, 16 Am. St. Rep. 706); Am. & Eng. Enc. Law, 900-902.

In *Baker v. Allen,* 66 Ark. 271 (50 S. W. 511, 74 Am. St. Rep. 93), the Supreme Court of Arkansas said:

At the common law, each proprietor had the right to protect his land against surface water flowing upon his soil; and, under the strict rules of that law, plaintiff would have no right of action. But this court, after what seems to have been a full consideration of the question, adopted a rule materially different from that of the common law. In the case of *Railway Co. v. Chapman,* 39 Ark. 463 (43 Am. Rep. 280), it held that the right of a landowner to obstruct the natural drainage or flow of surface waters was not absolute, and that, if such proprietor unnecessarily injure the land of upper proprietors by the erection of an embankment or levee, when, by reasonable care and expense, he might have avoided the injury, he becomes liable for damages thus occasioned. The rule as declared by this court is similar to that followed by the courts of several of the states.

In *Priest v. Boston & M. R. R.,* 71 N. H. 114 (51 Atl. 667), it is said:

The owner may put his land or other property to any use not unlawful which, in view of his own interest and that of all persons affected by it, is a reasonable use. For the consequences to others of such use he is not responsible. The question of reasonableness is a question of fact. . . . It is found that the defendants' use of their land, which is the substance of the complaint, was

reasonable. If when the side track was built a drain had been put in, there would have been no trouble. Whether the defendants ought to have foreseen the injury to the plaintiff if the drain were omitted is a question of fact, considered upon the general question whether what they did was reasonable. *Swett v. Cutts,* 50 N. H. 439, 446 (9 Am. Rep. 276).

Another exception is noticed by the California courts. Thus in *Los Angeles Ass'n v. Los Angeles,* 103 Cal. 461 (37 Pac. 377), it is said:

The doctrine of the civil law, in reference to a servitude in lower tenement in favor of the upper or dominant tenement, for the flow of surface water, had no application to lots held in cities and towns, where changes and alterations in the surface were essential to the enjoyment of such lots; and this rule has been very generally adopted in this country. *Ogburn v. Connor, supra,* at page 351 of 46 Cal., and cases there cited; *Corcoran v. City of Benicia,* 96 Cal. 1 (30 Pac. 798, 31 Am. St. Rep. 171); Dillon, Mun. Corp., sections 1039-1044. An apparent exception to the general rule that municipal corporations, in the grading and improvement of streets, are not bound to provide for the escape of mere surface water, has been hinted at in some of the cases, and established in others, in that class of cases where the surface water, owing to the conformation of the adjacent country, has formed for itself a definite channel in which it is accustomed to flow, in which cases it is held, as in *Conniff v. San Francisco,* 67 Cal. 45 (7 Pac. 41), that the municipal corporation had no right, pursuant to a general plan for the grading and improvement of Montgomery avenue, to erect a solid embankment, without a culvert or waterway, so as to obstruct the flow of a water course which flowed in a well-defined channel, although it served only to discharge the drainage or surface water from the adjacent hills, and, according to the statement of the case, did not come within the common-law definition of a water course. *Hoyt v. City of Hudson,* 27 Wis. 659, at pages 663 and 664 (9 Am. Rep. 473); Dillon, Mun. Corp., subd. 3, sections 1051, 1051a; *Lehn v. City and County of San Francisco,*

66 Cal. 76 (4 Pac. 965); *Corcoran v. City of Benicia,* 96 Cal. 1 (30 Pac. 798, 31 Am. St. Rep. 171); *Gibbs v. Williams,* 25 Kan. 214 (37 Am. Rep. 241); *Palmer v. Waddell,* 22 Kan. 352. In the last case quoted it was said: 'The rule that the owner of a tract of land may obstruct the flow of surface water across his land appears to and does have an exception, which is where surface water having no definite source is supplied by the falling rains and melting snow from a hilly region or high bluffs, and, owing to the natural formation of the surface of the ground, is forced to seek an outlet through a gorge or ravine, and by its flow assumes a definite or natural channel, and escapes through such channel regularly during the spring months of every year, and in seasons of heavy rains; and such has always been the case, so long as the memory of man runs.' And it was held that such channel so far possessed the attributes of a water course that the owner of lands through which such water course ran could not lawfully turn the flow upon adjacent lands to their injury and damage.

Enough has been said to indicate the general trend of the authorities, and perhaps, in view · of one of our own cases, more has been stated than is necessary· to present the proposition involved, for in *Willetts v. C., B. & K. C. R. R.,* 88 Iowa, 281, in speaking to this question, we said:

The appellant cites the rule of the common law, namely, 'that surface water is a common enemy which every landowner may repel at pleasure and refuse to receive on his land,' and contends that this is the rule in Iowa as between individual landowners, and alike applicable to individuals and railroad companies. Several cases are cited wherein this rule has been so applied, notably *Cairo Railroad Co. v. Stevens,* 73 Ind. 278 (38 Am. Rep. 139); *O'Connor v. Fond du Lac Railroad Co.,* 52 Wis. 526 (9 N. W. 287, 38 Am. Rep. 753). The rule of the civil law is that the lower land owes to the higher land the service or servitude of being bound to receive all of the water which naturally, without the hand of man, flows down upon it. The following extract from the case

of *Sullens v. Chicago, R. I. & Pac. Railway Co.*, 74 Iowa, 659, will show that neither of these rules has been adopted in Iowa by statute, as in some of the states, nor followed without qualification by this court. It is there said, in speaking of the case of *Abbott v. Kansas City Railway Co.*, 83 Mo. 271 (53 Am. Rep. 581), as follows: 'That case adheres to the common-law rule, and seems to depend in part upon the fact that by the statutes of Missouri the common law is made the rule of action and decision in that state. In this state there is no requirement of that kind, and we are free to determine the questions involved according to such rules of law as shall seem to us to be applicable. The difficulty which must sometimes arise from attempts to apply the strict rule of the common law to all cases is illustrated by the fact that the Supreme Court of Missouri was constrained to abandon it in two cases, which were overruled in the one cited above. Each case must, of necessity, depend largely upon its facts. Even in those states where the common law prevails the courts hold that the landowner must improve his property in a reasonable manner.' *Hosher v. K. C., St. J. & C. B. Ry. Co.*, 60 Mo. 329; *Abbott v. Railway Co.*, 83 Mo. 271 (53 Am. Rep. 581); *Pettigrew v. Evansville*, 25 Wis. 229 (3 Am. Rep. 50). 'But persons exercising this right to improve and ameliorate the condition of their own land must exercise it in a careful and prudent way. Each proprietor, in such case, is left to protect his own lands against the common enemy of all, so as to occasion no unnecessary inconvenience or damage to plaintiff.' *Mc-Cormick v. K. C., St. J. & C. B. Ry. Co.*, 57 Mo. 433. See, also, *Benson v. Chicago & Alton Ry. Co.*, 78 Mo. 504. This court said, in *Livingston v. McDonald*, 21 Iowa, 172, that 'the rules of the civil law, so far as they deny the upper owner the right to collect the water in a body, or precipitate it in greatly increased or unnatural quantities upon his neighbor', to the substantial injury of the latter, we deem to be just and equitable; and to this extent it is supported by the weight of authority in the common-law courts.' It is also said: 'We recognize the general rule that each may do with his own as he pleases; but we also recognize the qualification that each should so use his own as not to injure his neighbor.' The same

principle as applied to the obstruction of a flow of surface water from the dominant to the servient estate was recognized in *Drake v. Chicago, R. I. & Pac. Ry. Co.,* 63 Iowa, 302. The rule thus far adhered to by this court seems to be just, and we do not think there is sufficient cause to abandon it. The reasons for requiring that improvements on land be so made as to do no unnecessary injury to other lands apply with especial force to the construction of railways.

It will be seen from this case and *Livingston v. McDonald,* 21 Iowa, 161, that neither of the rules above stated has been adopted in its entirety in this state, but that, in common with the courts of many of the states, we are free to determine the questions involved according to such rules of law as shall seem to us to be applicable.' It is clearly the rule in this state that persons exercising the right to improve the condition of their own land must exercise it in a careful and prudent manner, so as to occasion no unnecessary inconvenience or damage to the servient owner; or, in other words, while each may do with his own as he pleases, he must do so in a manner not to unnecessarily injure his neighbor. There being evidence tending to show that the defendant and its predecessor could have relieved the plaintiff's land from the surface water by keeping open the ditch that was cut for that purpose, there was no error in overruling the defendant's motion for a verdict, nor in the giving and refusing instructions as to the rule in respect to surface water. The case being so exactly within the rule announced in *Sullens'* case, it is hardly necessary that we refer to other authorities. See, as relating to the subject, the following cases: *Sullens v. Chicago, R. I. & P. Ry. Co.,* 63 Iowa, 303; Id., 70 Iowa, 59; *Moore v. Chicago, B. & Q. Ry. Co.,* 75 Iowa, 263; *Noe v. Chicago, B. & Q. Ry. Co.,* 76 Iowa, 360; *Wharton v. Stevens,* 84 Iowa, 107; *Hunt v. Iowa Central Ry. Co.,* 86 Iowa, 15.

It is argued, however, that no matter what rule may be adopted for individuals, or railway companies, a city having power to grade and gutter its streets, to establish drains and sewers, can not be held liable for obstructing or damming surface water. In the *Livingston-McDonald* case,

in which we established the civil-law rule for the state, it is said: "And in so holding we add that we do not lay down any rule applicable to town or city property," and in the recent case of *Wilber v. Ft. Dodge,* 120 Iowa, 555, we said: "We have held that a city may be liable for damages caused by the grading of a street, even though done in accordance with the provisions of a grade ordinance, if thereby the natural drainage is destroyed, and no adequate means is provided for the escape of surface water. *Ellis v. Iowa City,* 29 Iowa, 229; *Ross v. Clinton,* 46 Iowa, 606; *Morris v. Council Bluffs,* 67 Iowa, 343."

This latter statement is perhaps a little broader than was intended. The true rule here, as we understand it, is that, as the city had power to grade and gutter its streets, it is not liable for defective plans, for in adopting them it acts in a judicial capacity. But it is liable if it negligently carries out such plans, or if without the adoption of any plans it proceeds in a negligent manner to make embankments or fills to the injury of an abutting or adjoining proprietor. As applied to the facts of the case, the city was not liable because of its establishment of grades for West Walnut and West Sixteenth streets because its act in so doing was either legislative or judicial in character; but in bringing the streets to these grades established, it was bound to the exercise of ordinary care and prudence, and if it unnecessarily or negligently filled ditches and drains in West Sixteenth street, and thus cast surface water back upon plaintiff's lots, without notice to her and without her knowledge and without giving her a reasonable time to bring her lots to grade, the city is liable, not because of defective plans, but by reason of negligence in doing a purely ministerial act; that is, of bringing the streets to the established grade, and in so doing filling the ditches and drains for the escape of surface water without providing an escape either temporary or permanent for the surface water. Moreover, there was

evidence tending to show that it so filled the streets as to collect surface water and discharge it upon plaintiff's lot. As plaintiff had the right to fill her lot by bringing it to the established grade, doubtless defendant was not obliged to provide permanent culverts, drains, or bridges, although that point we do not now decide. If after her property is brought to grade such culverts, ditches, or drains should be constructed, a question may then arise as to defendant's duty in the premises.

The foregoing rule, adopted for the decision of this case, has direct support in the following cases:

In *Cotes v. City of Davenport,* 9 Iowa, 227, it is said:

The duty of the city to construct temporary drains, if practicable, in such cases, is expressly recognized in some of the cases cited, and seems to us to be unquestionable. The corporation may not have been liable for a failure to enter upon the work, but having elected to act, or to proceed with the grading under the power granted, they must be held responsible for its proper and prudent execution. *Mayor et al. v. Furze,* 3 Hill (N. Y.) 612; *People v. Corp. of Albany,* 11 Wend. (N. Y.) 543 (27 Am. Dec. 95); *Rochester White Lead Co. v. City of Rochester,* 3 Comst. (3 N. Y.) 463 (53 Am. Dec. 316), approved in *Radcliff's Ex'rs v. Mayor of Brooklyn,* 4 Comst. (4 N. Y.) 199, 200 (53 Am. Dec. 357); *Lacour v. Mayor, etc., of New York,* 3 Duer (N. Y.) 406. How far it would be the duty to keep up such drains or culverts permanently, and after the plaintiffs had had a reasonable opportunity or time to raise their lot to correspond with the grade, we do not undertake to say, for no such question is made.

In *Ellis v. Iowa City,* 29 Iowa, 229, the following instructions were approved:

The city, as a public corporation, has a right to establish grades for the streets, and to fill up the streets to correspond with the grade established, and, if the work is done in a careful and skillful manner, the city will

not be liable for injuries to property, which are the necessary results of the careful and skillful grading of the streets. On the other hand, if the city, in grading the streets, did the work in an unskillful and improper manner, by making improper or insufficient gutters, by reason of which the water was caused to flow from the street upon the premises of plaintiff, she will be entitled to recover, if you find the injuries complained of resulted from such alleged unskillful construction of the street.

In *Russell v. City of Burlington,* 30 Iowa, 262, in speaking to this point, we said:

That the city had authority to grade its streets and change the grade is not denied. If, in the exercise of this authority, the appellant's property was consequently injured, he will have no right to compensation, unless such compensation is given by statute, or his property has been injured by the negligence or unskillfulness of the city in doing the work. *Creal v. City of Keokuk,* 4 G. Greene, 47; *Cotes & Patchin v. City of Davenport,* 9 Iowa, 227. It was immaterial, therefore, whether appellant had erected his residence by the grade thus furnished him or not, for the city might lawfully change the grade subsequently, and if it did so in a careful and skillful manner it would not be liable. If it did so negligently or unskillfully, whereby the plaintiff's property was injured, it would be liable for such injuries, whether appellant had erected his house to the existing grade or not. Thus, if a material portion of the plaintiff's property was injured, it would be liable for such injuries, whether appellant had erected his house to the existing grade or not. Thus, if a material portion of the plaintiff's lot had been washed away, or the building had been undermined, walls cracked, etc., and these were the results of negligence or unskillfulness on the part of the defendant, the plaintiff's right to recover would not be affected by the fact that he had or had not built according to the grade furnished by the city engineer.

Again, in *City of McGregor v. Boyle,* 34 Iowa, 268, the court, speaking through Miller, J., said:

The city having exclusive control over the streets and alleys of the city, to grade, gutter, and improve the same according to its own judgment, the defendant could not lawfully change or undo the improvements made by the city authorities. The city, as a public corporation, had the right to construct the sewer in question, and, unless the work has been negligently or unskillfully performed, the defendant would have no right of action for consequential injuries to his property; but if the city authorities constructed the sewer in an unskillful or improper manner, whereby the property of the defendant was injured, he may recover damages for injuries to his property caused by such negligence or unskillfulness. *Creal v. City of Keokuk*, 4 G. Greene, 47; *Cotes & Patchin v. City of Davenport*, 9 Iowa, 227; *Ellis v. Iowa City*, 29 Iowa, 229; *Russell v. City of Burlington*, 30 Iowa, 262. But while the defendant may have his action against the city for injuries to his property, resulting from the careless or unskillful construction of improvements upon the streets, yet even such carelessness or unskillfulness will not authorize the defendant to interfere with the work upon the streets. He has no such authority. The authority is vested exclusively in the city. The improvement being authorized by law, and constructed by the agents on whom the law conferred the authority, such improvement, though carelessly or unskillfully made, did not constitute a nuisance so that the defendant could lawfully interpose and remove the same. His remedy, in case of injury to his property in consequence of such careless or unskillful construction, is by action for damages.

Another case almost exactly in point is *Ross v. City of Clinton*, 46 Iowa, 606. In that case, Beck, Judge, writing the opinion, said:

The act of defendant complained of is the negligent causing of the surface water to run upon and accumulate on plaintiff's property and the failure to provide means to conduct it therefrom. The paragraph clearly charges that, by the negligent act of defendant, surface water was so collected upon plaintiff's premises, and no provision was made for carrying it away. The demurrer assails

the petition on the ground that the defendant is not liable for such negligent act. The question of defendant's liability thus raised must be now considered and determined. The identical question here presented has been passed upon by this court, and a city has been held liable in the action by a lot owner for a negligent act of the precise character of the one alleged in the petition. See *Cotes & Patchin v. City of Davenport,* 9 Iowa, 227. The act complained of in that case was the construction of a street and alley by erecting embankments, whereby the surface water was caused to run upon the premises of the plaintiff and there accumulate. It was claimed, and in fact was held by the court, that the city was not liable for the act under any statute. The liability of the city as found by the court, rested solely upon the common law. . . . It is said in the opinion that: 'The duty of the city to construct temporary drains, if practicable, in such cases, is expressly recognized in some of the cases cited, and seems to us to be unquestionable. The corporation may not have been liable for failure to enter upon the work, but having elected to act, or to proceed with the grading under the power granted, they must be held responsible for its proper and prudent execution. *Mayor, etc., v. Furze,* 3 Hill (N. Y.) 612; *People v. Corp. of Albany,* 11 Wend. (N. Y.) 543 (27 Am. Dec. 95); *Rochester White Lead Co. v. City of Rochester,* 3 Comst. (3 N. Y.) 463 (53 Am. Dec. 316), and approved in *Radcliff's Ex'rs v. Mayor, etc., of Brooklyn,* 4 Comst. (4 N. Y.) 199, 200 (53 Am. Dec. 357); *Lacour v. Mayor, etc., of New York,* 3 Duer (N. Y.) 406. How far it would be the duty to keep up such drains or culverts permanently, and after the plaintiffs had had a reasonable opportunity or time to raise their lot to correspond with the grade, we do not undertake to say, for no such question is made.' The doctrines of the case are approved in *Templin v. Iowa City,* 14 Iowa, 59. See *Ellis v. Iowa City,* 29 Iowa, 229. They are also supported by the decisions of other courts. But the contrary rules are not without the support of authority. See Dillon's Municipal Corporations, section 800, and notes, for reference to cases upon this question. The doctrines recognized by this court, as above stated, meet our approval, and they have the authority of precedents which we can not

disturb. We do not feel called upon to further vindicate them. . . .

In *Templin v. Iowa City,* 14 Iowa, 59, the court said: "The court in its charge to the jury recognized the rule of law as adopted by this court in the case of *Cotes & Patchin v. City of Davenport,* 9 Iowa, 227, 'that a municipal corporation is liable for the carelessness or neglect of its agents in the construction of public works, on the same principle that a natural person is liable for damages resulting from his carelessness, unskillfulness, or wrongdoing.' "

In *Morris v. City,* 67 Iowa, 343, the doctrine of the *Cotes* and *Ross* cases is approved; but it is also said that plaintiff must exercise reasonable diligence to protect himself by bringing his lot to grade.

In *Van Pelt v. City of Davenport,* 42, Iowa, 308, we said: "By projecting its street across the ravine, the defendant rendered necessary the construction of a culvert to admit of the discharge of accumulating surface water. Before the street was extended, the water in this ravine passed freely and unobstructedly and without damage to plaintiff's property. As the improvement made by the city created a necessity for a culvert, which the city could not neglect to construct without being derelict in its duty, it was incumbent upon it to exercise reasonable care, judgment, and skill in its construction. *Ellis v. Iowa City,* 29 Iowa, 229; *City of McGregor v. Boyle,* 34 Iowa, 268."

We have already quoted from *Wilbur's* case, *supra,* which is one of the latest pronouncements upon this subject. In *Freburg v. City of Davenport,* 63 Iowa, 119, it is held, in effect: "A city has the right to bring its streets to the duly established grade in such a way, time, and manner as it sees fit; and it has the same right as the owners of the abutting lots to protect itself against surface waters. When, therefore, a city brings its streets to grade, but does not construct culverts or adequate gut-

ters to carry off the surface water, which flows from the graded streets and damages abutting lots, which are below the established grade, the city is not liable, provided the work is done without negligence on the part of the city."

Appellees rely upon three cases from this court in support of the ruling of the trial court. The first is the *Freburg* case, just cited. The controlling feature of that case was plaintiff's failure to allege or prove that the work was negligently done or that its effect was to collect surface water into a pond or reservoir which was discharged or thrown over plaintiff's premises. The second is *Gilfeather v. City,* 69 Iowa, 310. That case contains some language which supports defendant's contention; but it does not overrule the cases heretofore cited in this opinion. Moreover, it was an action to recover damages from the city by reason of its failure to provide sluiceways or culverts under one of its streets to carry off backwater from a neighboring stream. Plaintiff's lots were below the grade, and the case holds that defendant was not required to construct culverts or sluiceways to keep overflow waters from plaintiff's property. The case is distinguishable from the one now before us in that no negligence was charged and the question of providing for the temporary escape of surface waters was not involved. The third case is *Knostman v. City of Davenport,* 99 Iowa, 589. That case is manifestly not in point, as an examination will show.

This opinion has already outgrown proper limits. But it has seemed necessary, in view of the conflict in the authorities and the apparently diverse holdings of this court, to go into the matter at some length. Much of the discussion might well have been omitted, and yet, in view of the nature of the case, it seems to be necessary to a correct solution of the exact question involved. The opinion is not to be regarded as an authority for anything more than is actually decided, and we are not to be understood

as extending the rule of nonliability of cities and towns for obstructing or diverting surface water.

Liability, if any in this case, is predicated upon the negligence of the city in doing the work. Whether or not it was negligent in the performance thereof or in failing to take precautions for the temporary flow of surface water was, as we think, a question for the jury under proper instructions. While appellant argues the rules as to measure of damages, we do not consider the point for the reason that appellee has not responded to appellants' argument. We do not hold that defendant is liable, as a matter of law. That question is one for a jury after all the testimony is adduced.

But, for the error pointed out, the judgment must be, and it is, *reversed*.