THE CITY OF WAVERLY V. S. H. PAGE, *et al.*, Appellants.

Waters: INJUNCTIONS: *Municipal Corporations*. A city, which, in accordance with Acts Nineteenth General Assembly, chapter 89, section 3, and Code, 1873, section 527, has made substantial improvements of a permanent character to keep open the natural outlet for surface water flowing through a water course, may maintain an action to enjoin the obstruction of such water course by the owners of the land through which it runs, although it is dry at all times except in cases of melting snow or unusually heavy rains, at which times water flows into it only a few days at a time,

where such diversion or obstruction may entail serious conse-quences on the city or the people interested in the drained territory.

*Appeal from Bremer District Court.*—Hon. P. W. Burr, Judge.

Saturday, April 9, 1898.

Action in equity to restrain the defendants from filling or obstructing a water course within the corporate limits of the plaintiff. There was a hearing on the merits, and decree for the plaintiff. The defendants appeal—*Affirmed*.

*G. W. Ruddick* for appellants.

*A. M. Potter* and *Gibson & Dawson* for appellee.

Robinson, J.—The plaintiff is a city of the second class, organized and existing under the laws of this state. It includes territory on both sides of Cedar river, and is intersected from east to west by an important street, known as "Bremer Avenue." Through the central portion of that part of the territory west of the river extends a water course known as "Dry Run." It crosses Bremer avenue near, and east of, Aspen street, which extends from north to south, intersecting the avenue. The run has two branches, which drain about one thousand five hundred acres of land, and unite within the city limits at a considerable distance north-west of the crossing at the avenue. Penn street is parallel to, and about one hundred and forty rods north of it; and between the two, extending from east to west, are five other streets. The run crosses Penn street, and the distance from that crossing along the run, to the river into which it empties is three hundred and sixty-six rods, and the fall is about twenty-four

feet.   The general course of the run from Penn street
to the river, although irregular, is southward near
Aspen street to the avenue; thence in a southeasterly
direction to the river.   From Penn street southward
for a distance of forty-two rods, the water course is dis-
cernible, but does not have well-defined banks.   The
banks are more prominent further south, and from a
point forty-two rods north of the avenue to the avenue
are reasonably well-defined, although not sufficiently
abrupt to prevent the cultivation of the ground by
ordinary methods, and the running of a mowing
machine over it.   One half of the bed of the run from
the avenue to Penn street has been cultivated, and the
larger part of that which has not been cultivated is
covered with sod.   The banks south of the avenue are
well defined, and gradually increase in height towards
the river.   The water course for a distance of fifty rods
from the river is from eight to ten rods wide, and its
banks are from ten to fifteen feet in height.   The
defendants own several lots at the intersection of the
avenue and Aspen street, which are bounded on the
south by the avenue, and on the west by Aspen street,
and over which the water course extends.   The lots are
one hundred and ten feet wide from the east to west,
and one hundred and thirty-two feet long; and the
defendants have commenced to raise their surface
about two and one-half feet, in order to erect thereon
a dwelling house, and, if permitted to do so, will fill
the water course.   The effect of that would be to dam
water which, if unobstructed, would flow over the bed
of the run, and turn it onto lots and streets in the
vicinity; and, if the street and other lots were so
graded as to prevent that effect, a dam would be
formed, which in times of high water would cause the
overflow of a large portion of the city north of the

avenue, to the great injury of the numerous inhabitants of that territory.

The plaintiff contends that Dry run is a water course, of which it has control, and which it has controlled for many years; that the water course should have been kept open, for the purpose of draining the territory through which it extends; and that, should it be obstructed permanently, great and irreparable injury would result to the city, as well as to its inhabitants. The defendants admit that there is a slight depression in that part of the city designated as "Dry Run," but deny that it ever had any defined channel or banks as a water course, or that any water ever flows through it, excepting the surface water from unusual rainfalls, or other extraordinary causes, and that in such cases the flow is for but a few hours at a time; and they insist that they have a right to fill the depression in their lots in the manner described. They contend that the water which would flow north of the avenue could readily be turned along the streets and alleys eastward into the river, and that it is the right and the duty of the plaintiff to make provision for disposing of water from the territory specified, in that manner. There is not a constant flow of water through the water course in question. On the contrary, it is dry, excepting in case of melting snow or of unusually heavy rainfall; and on such occasions water flows into it but a few days at a time. It sometimes happens that when an exceptionally large quantity of water has fallen the water course is not sufficiently large to carry off to the river the water as fast as it accumulates, and that lots and streets in its vicinity are overflowed. The plaintiff has for many years assumed control of the run. It has provided artificial channels at some places, and has erected numerous bridges over it, at a great

expense. In the avenue south of the lots of the defendant are two foot bridges and one wagon bridge. A walled channel has been made, which commences at the avenue, and extends southward. It is sixteen feet wide and four feet deep, and is of about sufficient capacity to carry off the water which flows from north of the avenue in times of ordinary high water.

There are authorities which hold that depressions in the surface of the earth, through which water flows only in times of high water, are not water courses, within the meaning of the law which forbids the obstruction of water courses; and, within the rule of such authorities, Dry run, north of Bremer avenue, is not a water course, and any proprietor might lawfully obstruct the flow of water therein over his premises. See *Hoyt v. City of Hudson*, 27 Wis. 656; *Gibbs v. Williams*, 25 Kan. 214. The appellant also cites the cases of *City of Cedar Falls v. Hansen*, 104 Iowa, 189, and *Knostman & P. F. Co. v. City of Davenport*, 99 Iowa, 589, in support of the same doctrine. In the former of these two cases it appeared that the defendant owned three lots, in which there was a depression which furnished an outlet for surface water from a pond. The pond was filled, but surface water at times flowed from the same territory through the depression. The city improved the street near the lots, and in so doing made a ditch along one side of two of the lots, and turned it onto the third lot, so that water from the ditch passed into the depression on that lot. The defendant had placed a house over the depression, and was about to fill the lot to the level of the street, and thus make a permanent obstacle to the flow of water in the depression; and we held that he had the right to do so. That conclusion was based upon the rule that a city may bring its streets to grade; that by doing so, it may turn surface water from its natural course, and owners of lots below

grade cannot complain, because of their right to protect themselves by bringing their lots to grade. The fact was also mentioned that the city had changed the course through which water naturally flowed over two of the lots of the defendant. It was said, in effect, that, in view of the power of the city to make the changes it did without liability, the defendant should be permitted to bring his lot to grade, even though by so doing he obstructed the natural water way. In the *City of Davenport Case* the plaintiff sought to hold the city liable for alleged negligence in failing to provide adequate means for carrying off surface water. What was said in the two cases respecting the right of a lot owner to bring his lot to grade must be considered with the facts to which the statements made were applied. The characteristics of the depression considered in the *City of Cedar Falls Case* were somewhat like those of that part of Dry run north of Bremer avenue; but, so far as we are advised, the course which the city had pursued towards it, and the effect of obstructing it, were wholly unlike the course pursued by the city, and the effect to be apprehended from the proposed obstruction, in this case. The plaintiff had for many years followed the plan of keeping Dry run open for the discharge of surface water which should be gathered from the territory it drained north of Bremer avenue. An outlet for that water was a great and pressing necessity, and to maintain such an outlet the plaintiff made substantial and expensive improvements, of a permanent character, to keep open the natural outlet. What it did in that respect was authorized in section 3 of chapter 89 of the Acts of the Nineteenth General Assembly, which gave to cities the power "to deepen, widen, cover, wall, alter or change the channel of water courses within their corporate limits," and by section 527 of the Code of 1873, which provided that "the city

council shall have the care, supervision, and control of all public highways, bridges, streets, alleys, public squares and commons within the city, and shall cause the same to be kept open and in repair.  *  *  *  *"
In the case of *Wharton v. Stevens*, 84 Iowa, 107, the proprietor of a farm claimed the right to obstruct the flow of surface water from an adjoining farm through a natural depression in the surface of the land; but we held that the right did not exist, and, in speaking of surface water, said:   "When such water flows, by a well-defined and natural course, upon lower lands, that flow cannot be interfered with by either the upper or lower proprietor.   But when such water has no defined course, but spreads out over the land without a well-defined course, it may be turned by the landowner in any direction.   But where surface water has a fixed and certain course, as a swale, though it may be narrow or broad, its flow cannot be interrupted, to the injury of an adjoining proprietor."   See, also, *Willitts v. Railway Co.*, 88 Iowa, 281; *Earl v. De Hart*, 12 N. J. Eq. 283; *Lambert v. Alcorn*, (Ill. Sup.), 33 N. E. Rep. 53. The rule announced in the case of *Wharton v. Stevens* is applicable in this case.   The obstruction of Dry run in the manner proposed by the defendants is unauthorized, and would be followed by consequences too serious to the plaintiff and the people interested in the territory drained by the run to be permitted.   The decree of the district court appears to be right, and it is AFFIRMED.