MINERVA B. WALTERS AND JOSIAH WALTERS, v. CITY OF MARSHALLTOWN, IOWA, Appellant.

**Municipal corporations:** STREET IMPROVEMENT: DRAINAGE: NEGLIGENCE: INSTRUCTION. The liability of a city for grading a street without leaving culverts therein to carry the overflow water from a stream previously passing over the street, thus flooding the adjacent land, is predicated upon the negligent and unskillful performance of the work, to be determined from the topography in that neighborhood, the existing improvements and the character of the stream; and an instruction assuming the duty of the city to construct culverts irrespective of the question of its negligence was erroneous.

**Same:** DRAINAGE: OVERFLOW WATERS: MATERIAL INCREASE: INSTRUCTION. To render a city liable in damages caused by an overflow of surface water after the grading of a street without providing culverts to carry the water across, it must appear that the volume of overflow water was materially and unduly increased by the embankment and lack of culverts, and the jury should be so instructed.

*Appeal from Marshall District Court.*—HON. J. M. PARKER, Judge.

THURSDAY, MAY 6, 1909.

REHEARING DENIED TUESDAY, JANUARY 18, 1910.

ACTION to recover damages alleged to have been caused by the construction of a grade in a public street of the defendant city. From judgment against it, the defendant appeals.—*Reversed.*

*F. E. Northup* and *C. H. Van Law,* for appellant.

*Boardman & Lawrence,* for appellees.

LADD, J.—Linn Creek flows in a north-easterly direction into the Iowa River. Lot two, belonging to plaintiffs, lies north of Main Street, and extends to the creek on the north and west. The Chicago & Great Western Railroad runs in an easterly and westerly direction immediately south of Main Street, and from a point immediately south of plaintiffs' east line curves southwesterly over Twelfth Avenue, which extends north and south, and intersects Main Street. It passes over Linn Creek some eight or ten rods west of said avenue on trestle work two hundred and eighty-three feet long. The grade of the railroad is considerably above the high-water mark. In the summer of 1906 the city of Marshalltown graded Twelfth Avenue from the railroad south to Nevada Street, a distance of one thousand three hundred feet and seven hundred feet on Nevada Street. This grade was twenty feet wide, and varied from two and one-half to four feet above the natural surface. The top was two feet above the high-water mark of the creek. The evidence tended to show that there was a swale or depression extending from the southwest over said avenue, before being graded, about halfway between the railway and Nevada Street, in an easterly direction for some distance, and then part of the water flowing through it passed northeasterly through a culvert in the railway embankment and the rest to the southwest. No culverts or waterways were left in the grade. Prior to its construction, when the creek overflowed,

the water passed over Twelfth Avenue as indicated, and, as the evidence adduced by plaintiffs tended to show, plaintiffs' land was not flooded. After the grade was completed, and about March 1, 1907, Linn Creek rose out of its banks, but the water was forced back by the embankment, so that it passed through the trestle work of the railway over the creek. There was a sharp bend in the creek below the trestle work, and near the Main Street bridge, and at this place an ice gorge was formed. The water flooded plaintiffs' land, washing away the soil which had been fertilized for garden purposes. An engineer testified that the only effect of the grade was to hold the surface or overflow water in the natural main channel of Linn Creek, that an ordinary bridge would have confined the water so as to result in scouring out a channel, and that a bridge or trestle work two hundred or three hundred feet long would have been necessary to allow the free passage of the water, but that this would not have been feasible "from the standpoint of the future improvement" of the addition east of the highway. The court instructed the jury that: "The defendant city in the construction of the embankment for a roadway in Twelfth Avenue was required to use reasonable and ordinary care in providing suitable and necessary culverts or waterways for the passage of any considerable body of water that might accumulate above the embankment, seeking an outlet to the east in the usual, ordinary, and natural way; or the defendant city was required to use reasonable and ordinary care in the construction of said embankment to provide necessary and suitable culverts or waterways to allow the escape of any large or considerable overflow of Linn Creek in the ordinary and usual direction said overflow was wont to flow or run."

Both this instruction and the rulings by which evidence concerning the effect of openings in the grade are criticised on the ground that the city was not required to provide culverts or waterways, but might confine the water in the

channel of the creek, regardless of the effect on the land

I. MUNICIPAL
CORPORATIONS:
street im-
provement:
drainage:
negligence:
instruction.
farther down the stream. As between individuals, this court upon full consideration has held that a riparian proprietor may not embank against the natural overflow from an inland stream when the effect may be to cast an increased volume of water upon other proprietors, to their injury. *Keck v. Venghause,* 127 Iowa, 529. As noted in that case, the statutes confer upon municipalities the authority to grade their streets, and, unless this is done in a negligent manner, no liability attaches. *Hoard v. City of Des Moines,* 62 Iowa, 326; *Morris v. City of Council Bluffs,* 67 Iowa, 343. In other words, the city is not liable for consequential damages for grading its streets if the work is performed with ordinary skill and prudence. *Wallace v. City of Muscatine,* 4 G. Greene, 373; *Creal v. City of Keokuk,* 4 G. Greene, 47; *Cotes v. City of Davenport,* 9 Iowa, 227; *Templin v. Iowa City,* 14 Iowa, 59; *Ellis v. Iowa City,* 29 Iowa, 229; *Russell v. City of Burlington,* 30 Iowa, 262; *Van Pelt v. City of Davenport,* 42 Iowa, 308; *Ross v. City of Clinton,* 46 Iowa, 606; *Hoffman v. City of Muscatine,* 113 Iowa, 332. See *Knostman v. City of Davenport,* 99 Iowa, 589. The statement that the rule which obtains between individuals is applicable to cities to be found in *Collins v. City of Keokuk,* 91 Iowa, 293, was not essential to the decision, and, as none of the cases cited therein were in point, may be rejected as dictum. The difference in situation and title sufficiently differentiates the rule from that applied to a country road. See *Holmes v. Calhoun County,* 97 Iowa, 360. And, where damage is suffered because the lot has not been brought to grade, the case is one *damnum absque injuria. Monarch Mfg. Co. v. Railway,* 127 Iowa, 511. There are expressions in *Damour v. City of Lyons,* 44 Iowa, 276, to the contrary; but that these were without the purpose of overruling previous decisions appears from the statement that "when the

plaintiff proves that the city has undertaken to provide for the surface water, and has done it negligently and improperly, whereby he has sustained damages, he makes out a *prima facie* case." This principle had been fully stated by the justice writing the opinion in the then recent case of *Van Pelt v. City of Davenport, supra,* and this circumstance, together with the fact that it has been uniformly adhered to since, leaves no doubt that the design was not to disturb previous decisions, and that the liability of a city or town for injury resulting from making authorized street improvements must be predicated upon negligent or unskillful performance. Reverting to the facts of the case before us, it will be recalled that there were no openings in the grade. The duty of the city to provide culverts or waterways for the overflow waters from Linn Creek is assumed in the instruction, the very point the city was contesting; and the only question submitted was whether reasonable care had been exercised in providing suitable culverts or waterways for its passage "in the usual, ordinary, or natural way," or "in the ordinary and usual direction said overflow was wont to flow or run." The issue which should have been presented was whether, in view of the topography of that neighborhood and the existing improvements and the character of the stream, the city was guilty of any want of ordinary skill and prudence in grading the street without culverts or other waterways for the passage of overflow water from the creek. If so, and in consequence thereof plaintiffs were injured in their property, the city was liable; otherwise not.

II.  In the eleventh instruction the jury was told that if the failure to provide suitable culverts or waterways resulted in throwing "larger and increased volumes of water" upon plaintiffs' land at the time of the flood about March 1, 1907, than would have been thrown without said embankment, and such increased volume of water caused injury

2. SAME: drainage: overflow waters: material increase: instruction.

thereto, recovery should be awarded. This was repeated in substance in the twelfth instruction, but the thirteenth instruction was to the effect that, even though the city did not exercise ordinary care in providing culverts or waterways through the embankment, "yet, if such want of culverts did not materially increase the amount of water overflowing the plaintiffs' premises, then the defendant would not be liable." The criticism is that the jury was not told that the volume of water thrown on plaintiffs' land must have been "materially and unduly increased." This thought was not included in the first two instructions, but all three should be read together and, when this is done, no doubt is left as to the necessity of the volume being materially increased having been clearly indicated to the jury. Ordinarily "unduly" is coupled with "materially" in such cases; that is, the volume of water must have been "materially and unduly" increased. *Sheker v. Machovec,* 139 Iowa, 1. "Unduly," as used in this connection, means excessively or disproportionately, and is not synonymous with "materially." We should not be inclined to reverse the judgment in this case because of the omission, but direct attention to it that the error shall not be repeated on another trial.—*Reversed.*