FRANK CECH v. CITY OF CEDAR RAPIDS, Appellant.

**Municipal corporations:** DRAINAGE OF SURFACE WATER: NUISANCE: INJUNCTION. A city has no right to drain surface' waters flowing into its streets into an unnatural water course and so as to cast it upon adjoining lands in a materially larger quantity and in a different manner than it would naturally flow, and not in a natural water course; but it has no greater duty in this regard than a private owner would have in protecting adjoining lands from such injury. And in exercising its power to make its streets passable it may provide for the passage of surface water in drains or culverts through or under the streets, and if the method adopted is reasonably suited for this purpose an abutting owner can not complain that he has not been relieved of the burden of drainage to which his land was already subject, although the improvement operates to some extent to his detriment.
In this action to enjoin a city from maintaining a tile drain across one of its streets, the evidence is held to show that the same discharged the surface water into a natural depression on plaintiff's land, and that the only effect of the drain or culvert was to discharge the water directly onto plaintiff's land in a natural depression, instead of allowing it to spread over the highway before reaching his land, and does not therefore constitute a nuisance which the plaintiff is entitled to have abated.

**Same:** PRIOR ADJUDICATION. The finding of a jury in a prior action at law for damages, that the surface water was discharged

through a street culvert constructed by the city into a natural depression on the plaintiff's land, is conclusive on that question in a subsequent action by plaintiff to restrain the city from maintaining the drain.

*Appeal from Linn District Court.*—HON. F. O. ELLISON, Judge.

TUESDAY, MAY 3, 1910.

ACTION to enjoin the defendant city from maintaining a drainage tile across one of its streets, which, as plaintiff alleges, collects and turns upon plaintiff's property a larger amount of surface water than would naturally flow thereon, and thus causes plaintiff permanent and irreparable injury. There was a decree for the plaintiff, finding the allegations of his petition to be true, and enjoining and restraining defendant from discharging the surface water upon plaintiff's premises through the tile drain as now constructed, and ordering defendant "to make a suitable provision for the water conducted across the street through the tile drain, so that the same may be taken care of without discharging it through said drain upon plaintiff's premises, and that, if said water can not be so taken care of, then said tile drain be closed or removed, so that the surface water shall not be' concentrated and cast upon plaintiff's said land through said tile." From this decree the defendant appeals.—*Reversed.*

*Redmond & Stewart* and *Frank C. Byers,* for appellant.

*Powell & Powell,* for appellee.

McCLAIN, J.—Plaintiff's premises consist of four lots in a portion of the defendant city west of the Cedar River and alongside the highway which is on the east line of

the right of way of the Chicago, Rock Island & Pacific Railway Company.   The land between the right of way and the river is low and flat, but west of the right of way is higher ground, from which surface water naturally flows to the eastward until it reaches the river.   At a point in the railroad right of way immediately west of defendant's premises, a culvert was constructed under the track when the track was originally laid about fourteen years ago; this culvert serving the purpose of passing the water from the higher land to the west across the right of way in the highway adjoining it on the east; but, until the year 1904, there was no culvert or opening of any kind through or under the highway to carry off the water coming through the railway culvert, and, as a consequence, in time of rains the water discharged upon the highway through the railway culvert caused the formation of mud-holes rendering the highway almost impassable at such seasons.   In March, 1904, one Kennedy, the street commissioner of defendant city, in response to complaints as to the condition of the portion of the street in question during wet weather, caused a twenty-four-inch tile to be laid diagonally across the street from the place where the water flowing through the railway culvert reached the street to the edge of the highway within a short distance of defendant's land which adjoined it.   Soon after this tile was laid, there were very heavy rains, and the surface water flowing through this tile and coming upon plaintiff's land caused large excavations in the sandy soil and cut a ditch into which and through which the surface water still runs from time to time when there are heavy rains, causing portions of plaintiff's land to be unsuitable for tillage and especially for the purpose of truck farming, to which it has been appropriated by him.   After passing across plaintiff's premises, such surface water accumulates in pools in another highway and on the land of other owners which lie in its general course toward the river, and plaintiff

alleges that these pools become offensive and a nuisance to the neighborhood.

It may be conceded that if the tile drain in question had the effect of collecting surface water and discharging it upon plaintiff's land in substantially larger quantities and substantially in a different manner, and not in a natural water course, plaintiff is entitled to relief; and the only controversy in the case is as to the facts. No complaint is made as to the railway culvert, which, as already indicated, had been in existence for many years, and through which surface water from the higher land to the west was flowing in time of rains before plaintiff purchased land. The evidence shows that for three hundred or four hundred feet north from this culvert and for two hundred or three hundred feet south therefrom there is a natural slope toward the point where the tile is now laid in the highway, and it is not claimed that, in the absence of this tile, the water did not cross the highway and flow upon plaintiff's land and across his land in a general easterly direction towards the river, but plaintiff's contention is that, before the tile was constructed, the highway distributed the water more or less, so that it did not flow in any fixed channel, and did not cause a washing of the land, and that the discharge of the water through the tile has caused such washing, and continues to keep portions of plaintiff's land untillable. Under the evidence, it is clear that no more water is thrown upon plaintiff's land than would previously have flowed upon it coming as all of it must through the railway culvert; and, further, that the highway can not be kept in reasonably good condition for passing during wet weather, unless this water is carried across the highway by a culvert or drain, or the water is carried north or south along the highway to some other outlet than that available in accordance with the natural course of drainage. Therefore, as it seems to us,

1. MUNICIPAL CORPORATIONS: drainage of surface water: nuisance; injunction.

the question is simply this: Has the city the right to maintain this street alongside of plaintiff's land in good condition by carrying the surface water which comes through the railway culvert across the highway in one place, instead of allowing it to form pools and mudholes in the highway, or, as an alternative, provide a ditch or sewer which shall entirely relieve plaintiff's land of this surface water by carrying it to some outlet which it has not heretofore had.

While a city has no right to improve its streets in such a negligent manner as to cause injury to an abutting property owner by throwing an unnecessary burden upon him or causing injury which he might have protected himself against if he had reasonable warning (*Hume v. Des Moines* (Iowa), 125 N. W. 846), it is unquestionably the right of the city to make its streets passable, and in doing so to provide for the passage of surface water in drains or culverts through or under them, and, if the method adopted is reasonably suitable for the purpose, the abutting property owner can not complain that he has not been relieved of a burden of drainage to which his land was already subjected, even though the improvement of the street operates to some extent to his detriment. The city certainly has no greater duty to care for surface water in the protection of property abutting on its streets than the private owner would have in protecting an adjoining owner from such injury. By statutory provision, now found in Code Supp., section 1989-a53, it is provided that "owners of land may drain the same in the general course of natural drainage by constructing open or covered drains discharging the same into any natural water course or into any natural depression whereby the water will be carried into some natural water course, and, when such drainage is wholly upon the owner's land, he shall not be liable in damages therefor to any person or persons or corporation." And in applying these statutory provisions it has been held

that the natural water course referred to is not necessarily a channel with banks, but, if the surface water usually flows in a given course within reasonable limits, the line of its flow is such a water course or natural depression as the statute contemplates. *Hull v. Harker,* 130 Iowa, 190. Now, it is shown by the evidence that prior to the construction of the tile drain across this street the water did flow over plaintiff's land in a depression which the witnesses referred to as a slight ditch, not so deep, however, as that the plaintiff could not plow across it, and it also appears that the water had already commenced to cut into the soil before the tile was laid. Indeed, we are not satisfied that the unusual flow of surface water due to exceptionally heavy rains soon after the tile was laid would not have excavated plaintiff's land in much the same manner as it was in fact excavated soon after the laying of the tile; for, as we understand the evidence, the cutting had already commenced, and it was likely in the course of nature to continue to plaintiff's damage, especially at times of excessive rainfall. There was no natural drainage for the water in any other direction or over any other portion of the plaintiff's land, and, as it seems to us, the only effect of the construction of the tile was to improve the highway and carry the water coming through the railway culvert directly upon plaintiff's land, instead of allowing it to spread over the highway before it reached his land. We reach the conclusion that the improvement of the highway was not in its nature unreasonable, nor made in a negligent manner, and therefore that the tile drain does not constitute a nuisance which plaintiff is entitled to have abated.

The decree of the lower court contemplates some other disposal by the defendant of the surface water coming through the railway culvert, but there is nothing in the evidence to indicate that any other disposal could be made, save by the construction of ditches or sewers which shall

take the water out of its natural course to some other out-
let than that through which it has usually flowed, and
there is nothing to indicate that any such disposition is
reasonably practicable. We are not referred to any statute
or rule of law which requires a city to protect property
abutting on a street from the surface water which in the
course of natural drainage flows upon or across it.

If we had any doubt under the evidence as to the
fact that the water coming from the railway culvert natu-
rally flowed across the highway and upon plaintiff's land

2. SAME: prior at the point where this tile drain is now
adjudication. laid, we should be compelled to adopt as con-
clusive on that question the finding of a jury in an action
at law brought by this plaintiff against this defendant
soon after the tile was laid and the ditches and holes in
plaintiff's land were cut out, in which action plaintiff
sought to recover damages for the injury to his property.
In that action under proper issues, the trial court submit-
ted to the jury the question whether prior to the laying
of the tile drain in the highway the surface water from
a territory west of the railway right of way was carried
away by the ditch on the westerly side of the highway,
and only that portion which overflowed said ditch came
onto plaintiff's land in such manner as to cause it any
damage, and whether the negligent and improper con-
struction of the tile drain increased the flow of water and
cast it upon plaintiff's land in a different manner, to his
damage. The evidence in that action, as in this, showed
the cutting of the holes and ditch in plaintiff's land after
the tile was laid, and the court told the jury to find for
the defendant, if the evidence showed that water had pre-
viously crossed the street and reached plaintiff's premises
in its natural course at or about the place where the tile
drain was constructed and no additional water was gath-
ered up and cast upon plaintiff's land by said drain. The
jury returned a verdict for the defendant, and thereby,

as we think, directly found that prior to the laying of the tile drain in the street the water did cross the highway at this place in its natural course and flow upon plaintiff's land. The judgment entered upon this verdict constituted, as we think, a final adjudication of the right of defendant to carry the water coming from the railway culvert across the highway by this tile drain.

We reach the conclusion that the lower court erred in its decree against the defendant, and such decree is therefore *reversed*.