B. R. HEINSE, Appellant, v. LUDWIG THORBORG, Appellee.

No. 39906.

MAY 16, 1930.

*White & White* and *Campbell & Campbell,* for appellant.

*Clark & Clark,* for appellee.

WAGNER, J.—The appellant is the owner of the northeast quarter of the northwest quarter and the northwest quarter of the northeast quarter of Section 1, Township 88, Range 40, in Ida County, and the appellee is the owner of the land to the south and west thereof, to wit: The west half of the northwest quarter and the southeast quarter of the northwest quarter and the southwest quarter of the northeast quarter of said section, township, and range. Maple River lies to the east of said land, and its course is from north to south. There is a creek running across the appellant's land from northwest to southeast, which empties into Maple River some distance east of the southeast corner of appellant's farm. The appellant seeks to enjoin the flow of surface water from appellee's land across his land at two points, one of which is on his south line, and the other of which is on the west line of his farm. The water flowing at both points is surface water, and appears only during freshets.

It is the appellant's contention that the appellee has diverted the water, the natural drainage of which is claimed to be from southwest to northeast, and all on appellee's land, in an easterly direction, so that it flows upon his land across the western boundary. However, the chief bone of contention between the parties is as to the course of the water at the point on his south line. The trouble between the parties gravitates around a point some rods south and east of the southwest corner of appellant's land, the exact distance of said point from appellant's land not being shown by the record. A watercourse comes from the north on appellee's land lying to the west until some rods south of a line running west from appellant's south line, and then the watercourse veers to the east; and before said point where the dispute arises is reached, it runs north of east, and just before said point is reached, it runs a little south of east. It is the appellant's contention that from this point, the natural watercourse is in a southeasterly direction across the appellee's land; while the appellee contends that from said point the natural watercourse veers to the northeast to appellant's line, and then in an easterly direction south of the partition fence line to a point where it turns across the line in a north-

easterly direction toward the creek hereinbefore mentioned. The disputed question is as to whether or not the depression or ditch which conveys the water to the appellant's line and to the east thereof and across the same is a natural watercourse. It is the rule of this state that a swale or depression through and over which surface water runs according to the laws of nature is a watercourse, even though this depression or swale has no well defined banks. See *Hull v. Harker*, 130 Iowa 190; *Parizek v. Hinek*, 144 Iowa 563. The appellant testifies that this ditch or depression is from 24 to 30 inches deep, and about 12 feet wide. As to natural watercourses running from the land of one onto the land of another, the upper land is known as the dominant estate, and the lower land as the servient estate; and the dominant estate has an easement of drainage through the natural watercourse across the servient estate, and the owner of the servient estate has no right to prevent, by artificial means, the flow of surface water through the natural watercourse from the dominant estate. See *Wharton v. Stevens*, 84 Iowa 107; *Vannest v. Fleming*, 79 Iowa 638; *City of Waverly v. Page*, 105 Iowa 225; *Hume v. City of Des Moines*, 146 Iowa 624; *Besler v. Greenwood*, 202 Iowa 1330; *Pester v. Smith* (Iowa), 167 N. W. 580 (not officially reported).

The question confronting us is solely one of fact. Is the depression or ditch running from the aforesaid point in a northeasterly direction to appellant's south line, thence in an easterly direction to the point where it crosses the line and runs in a northeasterly direction to the aforesaid creek, the natural watercourse, as contended for by the appellee? Or does the natural watercourse run from the aforesaid point in a southeasterly direction across appellee's land, as contended for by the appellant? The preponderance of the evidence is that the appellant's land north of the line is lower than the appellee's land. The appellant has plowed his land against the fence, and made sort of an embankment for a considerable distance west of the point where the water crosses his land. Were it not for this embankment, the water would go across his land farther west than it does. He has placed three straw stacks in the ravine at or near the point where it crosses the line, but the water, although impeded thereby, still finds its outlet upon his land. In recent years, the appellee's land has been cultivated,

and no doubt the process of erosion has worked more rapidly than when it was virgin soil. The county engineer was used as a witness, and testified that the natural course of the drainage from the point in question was toward the appellant's farm; that the ditch was not artificial, and what depression there is, has been caused by the process of natural erosion. He further testified: ''I do not know of any possible way that the water could flow, from my observations out there, other than the way it does flow right now, or at the time I was there.'' Hoffman, a civil engineer, called as a witness by the plaintiff, testified: ''Looking again at the plat, Exhibit A [one prepared for the use of the appellant], I would say that the water is running in its natural course at present.'' There is considerable drainage through this watercourse, and in times of freshets, much water passes through the same.

To further comment upon the testimony would only prolong the length of this opinion. We have read the record with care; and, while there is some little conflict in the testimony, we are abidingly satisfied that the natural watercourse is and always has been as contended by the appellee, and that the appellant, by his obstructions, has sought to obstruct the flow of water coming from the dominant estate through the natural watercourse. The trial court denied the appellant an injunction, and found that he had endeavored to divert the path of the water where the watercourse enters upon his land; that the appellant conceded by his testimony that his efforts in that respect were for the purpose of obstructing and turning the water from the course which it now pursues; and that the appellee is entitled to an injunction, enjoining the appellant from further attempts to obstruct or divert the flow of water from its present course. With this finding and decree we are fully satisfied.

The appellant contends that the decree should provide that the appellee dig the ditch on his own land from the point where it enters the land of the appellant, and thus convey the water over his own land to the river. It is shown that there is a knoll or rise in the land to the east of where the natural watercourse enters the land of the appellant. Since the appellee is the owner of the dominant estate, and the appellant is the owner of the servient estate, it is the duty of the owner of the servient estate

to maintain the natural watercourse used for drainage purposes free from obstruction, and no duty such as is asked by the appellant rests upon the appellee. The duty of caring for the water coming through the natural watercourse rests solely upon the appellant, the owner of the servient estate.

Relative to the claimed diversion of the water at the point on the west line of appellant's farm, the court also found against the appellant. We have read the record with care, and are satisfied that there has been no change in the drainage at said point by artificial means. The decree of the trial court is correct in all respects, and the same is hereby affirmed.—*Affirmed*.

MORLING, C. J., and STEVENS, DE GRAFF, and ALBERT, JJ., concur.