DAN WOODS, appellee, v. INCORPORATED TOWN OF STATE CENTRE, appellant; CARL L. LISTON, intervenor-appellee.

No. 49221.

(Reported in 85 N.W.2d 519)

October 15, 1957.

Adams, Adams & Adams, of Marshalltown, and Cor. Van De Steeg, of Orange City, for appellant.

Haupert & Robertson, of Marshalltown, for appellee.

Larson, J.—We are convinced, as was the trial court, that the equities are with the plaintiff and intervenor, hereinafter referred to as plaintiffs, and with certain modifications we affirm the judgment of the lower court.

It is true there seems to be hopeless conflict in the authorities throughout the country as to the law relating to the handling of surface waters, and even in our jurisdiction some of

the cases seem to be irreconcilable. Each case appears to largely depend upon the circumstances, and when carefully considered in that view the conflict is not so apparent. The issues raised herein relate to original drainage or natural waterways, artificial water-courses, easements relating thereto, and to municipal and lot owners' rights to establish and meet grade lines which affect surface water drainage.

The facts are relatively simple and are not greatly in dispute. There is substantial evidence in the record to justify the court's findings of fact, and we agree with them. Plaintiff, Dan Woods, acquired Lots 3, 4, 5 and 6, in Block 15, Babcock and Thompson's Addition to the Town of State Centre, Iowa, in 1949, and sold Lots 3 and 4 to intervenor, Carl L. Liston, in 1954. Liston promptly built a house and garage on his property and filled a part of Lot 4 to the level of the street as a driveway to his property. The home of Woods, over thirty years old, is located on Lot 6. Lot 5 is vacant, but there have been negotiations to sell it to a party interested in building a home. The residence of one of the witnesses is located on Lots 1 and 2. All of these lots are on the south side of Fourth Street between Oneida Street on the east and Carpenter Street on the west which runs north and south. Third Street is the next east-and-west street north of Fourth. On the land located at the northeast corner of the intersection of Oneida and Third Streets is located a grade and high school.

In 1930 or 1931 the State Highway Commission, with the approval of the town council, graded and paved Fourth Street and established thereon U. S. Highway Route 30. In doing so, they replaced a 12-inch diagonal pipe about halfway in this block with an 18-inch culvert emptying some three or four feet below the grade, 10 feet north and 18 feet east of the northwest corner of Lot 4. They also removed a 12-inch culvert at the east side of the Fourth Street intersection, and placed one under the north side of Oneida extending westward. Ditches were established from that point to the north entrance of the 18-inch diagonal culvert. Surface water from the north was no longer permitted to go south by the Fourth Street intersection, but was sent westward on Fourth. No ditches were established westward beyond this culvert on either side of the street, and the water

which came out the south end of the culvert flowed over Lots 4, 5 and 6, upon which there was a marked depression, to the alley behind them, thence westerly. The lots were each 58 or 59 feet wide and 120 feet deep, so that there were only some 135 feet between the south outlet of the culvert and the southwest corner of the Carpenter and Fourth Street intersection. In view of a slight fall westward to Carpenter Street, some discussion was had as to the feasibility of a ditch or pipe placed in the street covering that distance, from whence the water could be sent south some 120 feet to reach the same point it did by traversing plaintiff's Lots 5 and 6. We cannot understand why that was not done at the time of the improvement in 1931, but apparently the owners of Lots 5 and 6 believed there was nothing they could do but protest, which they did to no avail. Action was not taken, which gives rise to the principal contention now made by defendant that there is a town right established by prescription or easement which may not be disturbed.

In 1950 or 1951 further improvements by the town were made which increased the volume and flow of water to this culvert and thence to plaintiff's lots. Oneida Street was graded up, with most of the water carrying ditch on the east side, and was *blacktopped.* The school grounds were *blacktopped,* as was Third Street to the south. This street had been a flat muddy street, but after the improvement, new culvert guides directed the west half of the block drainage to the east ditch on Oneida Street, thence south to Fourth Street, and then westward to the culvert emptying some 10 feet from complainant's properties. This, plaintiffs contend, further increased both the flow and the volume of water to their properties, in addition to debris of every nature, and caused much damage to them. The trial court believed it was a substantial increase due to the fact that little or none of this surface water could soak into the ground over that area. Of course it is not contended sufficient time elapsed from 1950 to May 1955, when this suit was commenced, to establish an easement, but it is defendant's contention that the easement established from 1931 to 1950 of a watercourse across Lots 4, 5 and 6 would not be affected by the increased flow or volume as long as it did not drain additional territory. Plaintiff, Woods, admits that prior to 1930 the lots involved were burdened by

about half the area of Block 13 just north of his lots, but offered evidence such volume was slight and beneficial. He contends until he desired to fill in his lot, he was deprived of no right upon which prescription rights would run; that this volume at one time was carried by an 8-inch tile, and that such drainage did not make his property a watercourse under the law. As to the 1950 increase plaintiff said, "Ever since 1950 * * * in every rain there was a regular river through there. Twice as much water, anyway, I would say."

After intervenor, Liston, had filled his lot to make a driveway, plaintiff advised the town council he wished to fill his lot some 3 or 4 feet to meet the street grade, and asked the council to otherwise dispose of the water emptying from the culvert. He was asked, to replace the covered sidewalk, and agreed. He was then told he could fill his lot to grade if he would put in a drain tile under the fill to carry away the water from the present culvert. This he refused to do, and continued to fill his lot to grade back for some 75 feet, which included fill on the street beyond his lot line. The involved culvert was stopped by concrete. The town removed the concrete, and from the hole at the end of this culvert poured water which washed away parts of the new fill. Thereafter when the council refused to consider extending a ditch westward on the south side of Fourth Street, this action was commenced. The town countered asking that the obstructions be removed and the defendant be restrained from obstructing the flow of said water over his property.

Other facts were related, but these are the ones we deem material to this decision.

■ I. The rights and obligations of municipalities and of individual property owners in connection with the control and distribution of surface waters have been the subject of numerous decisions of this court. We cannot list all of them in this opinion, but will refer to some of the leading cases for pronouncements of interest herein. One of the first general reviews summarizing the law up to that time was Hume v. Des Moines, 146 Iowa 624, 125 N.W. 846, 29 L. R. A., N. S., 126, Ann. Cas. 1912B 904, written by Judge Deemer. It was held therein that in exercising the power and duty of a city to grade its streets, reasonable care and prudence must be taken, and if it

unnecessarily or negligently cast surface water upon adjacent lots without giving the owner a chance to bring his lot to grade, there would be liability due to negligence in the performance of a ministerial act. It is obvious that when the city acts negligently and damage results, the owner's rights may be and perhaps must be maintained to avoid a loss of the right.

II. It is generally true that one, including municipalities, cannot collect unreasonable amounts of surface water into an artificial channel, or in substantially greater volume than usual, and pour it upon the land of another to his injury. Hume v. Des Moines, supra; Trumbo v. Pratt, 148 Iowa 195, 126 N.W. 1122.

III. "Surface waters" have been described, as the term indicates, as water on the surface of the ground of a casual or vagrant character following no definite course, of a more or less temporary existence, which spread at random over the ground and are lost by percolation into the soil and by evaporation. They are to be distinguished from the water of creeks, streams, rivers, ponds, and lakes, having a substantial existence and a substantially definite location. Hunt v. Smith, 238 Iowa 543, 555, 28 N.W.2d 213, 218, 219; 41 Iowa Law Review 231, 232. Surface water is sometimes referred to as a "common enemy." See 25 Am. Jur., Highways, section 87, pages 391-393; 56 Am. Jur., Waters, section 78, page 565.

In McQuillin, Municipal Corporations, Third Ed., Volume 13, section 37.254, page 673, we find: "The municipality may protect its streets from water that accumulates thereon, and to that end may construct drains, gutters, culverts and conduits, and may discharge the water into natural drains, but it has no right to discharge the water thus accumulated in a body upon adjacent lands. That is, where surface water is collected by the municipality from the highway and discharged upon private property in *substantially* larger quantities and in a substantially different manner than it would flow naturally, the owner of such land is entitled to damages therefor" (emphasis supplied), citing Cech v. Cedar Rapids, 147 Iowa 247, 126 N.W. 166.

If after the grading of a street surface waters flowed as they did before, of course there is no cause for complaint against

the municipality. But the town has no right, by artificial drains, to direct surface water from the course it would otherwise take and cast it in a body large enough to do substantial injury on a private owner's land. See Baker v. Town of Akron, 145 Iowa 485, 122 N.W. 926, 30 L. R. A., N. S., 619; Wilbur v. Fort Dodge, 120 Iowa 555, 95 N.W. 186; Dixon v. Nashville, 29 Tenn. App. 282, 203 S.W.2d 178.

But courts will not act to control the exercise of discretionary powers of a municipality except where there is "bad faith" or gross abuse or manifest oppression, such as unreasonable interference with others' property rights. McQuillin, Municipal Corporations, Third Ed., Volume 17, section 49.52, page 280. It is stated therein in Volume 17, section 49.35, page 240, that "permissive use of plaintiff's premises for a time by a city will not defeat a plaintiff's suit to enjoin the city from discharging ponded waters from the city streets upon plaintiff's land", citing Los Angeles Brick & Clay Products Co. v. Los Angeles, 60 Cal. App.2d 478, 141 P.2d 46. We may add the Iowa case of Cedar Falls v. Hansen, 104 Iowa 189, 73 N.W. 585, 65 Am. St. Rep. 439, which held that the owner of a city lot below grade does not, by acquiescing in the construction by a city of ditches conveying surface water over his premises, estop himself from obstructing the flow of the water in such ditch by raising his lot to grade.

It may be said then that when the municipality is engaged in lawful work, and acts prudently, on its own ground or streets, and it happens that from it some surface water is changed in its course and runs onto a lot not yet brought to grade in substantially increased quantity, it is not an actionable cause, but is damnum absque injuria. Cech v. Cedar Rapids, supra. If the amount is unreasonable or does actual damage, the rule would of course be otherwise. Such is the law in Iowa, and the reasoning is this: when a moderate overflow comes about from the rightful acts of the municipality and as a result of the topography of the land, no private rights are yet invaded. However, when the lot owner exercises his right to alter the topography of his land by bringing his lot to the established street grade, then to cast artificially collected waters upon him

does violate his right and in due time, if uncontested, an easement may be created in favor of the city. See Los Angeles Brick & Clay Products Co. v. Los Angeles, supra.

Thus in the case before us, while the town in fact did grade and install culverts and ditches in 1930 which artificially increased the volume of water passing under the involved culvert and by natural depression onto plaintiff's land, it was not exceeding its powers and duties so long as the lots remained below grade and the amount of the increase was not shown to be substantial or unreasonable. The amount of this increase from 1930 to 1950 was not shown, but complaint was registered *after* the town improvements of curbing and blacktopping in 1950, when the volume was claimed to be "twice as much water." Found to be true, such clearly was substantial and unreasonable. At that time plaintiff's lots were below grade, but when they were raised in 1954 and 1955 the fill acted as a barrier and obvious damage occurred when the lots were overflowed and the fill was washed to the rear.

IV. It must be recognized that there is a different rule applicable to urban and rural lands pertaining to the disposal of surface water. Clearly, in rural territory one may acquire a prescriptive right across another's land by discharging surface water artificially collected or directed upon the other's property. In such cases the original act is not excusable but is wrongful from the start. Fennema v. Menninga, 236 Iowa 543, 19 N.W.2d 689, and cases cited; Keck v. Venghause, 127 Iowa 529, 533, 103 N.W. 773, 774, 4 Ann. Cas. 716, and cases cited; Cedar Falls v. Hansen, supra, 104 Iowa 189, 73 N.W. 585, 65 Am. St. Rep. 439; Knostman & Peterson Furniture Co. v. Davenport, 99 Iowa 589, 68 N.W. 887. In explaining this difference we said in Keck v. Venghause, supra:

"The statute gives such corporations the right to grade their streets, and the adjoining land or lot owners the corresponding right to bring their lots or lands to the established grade, and for these reasons a different rule has been applied to cities."

We are cited no authorities nor have we found any to alter that rule in Iowa. Most cases found give rise to an immediate right of action when, by imprudent or negligent acts, the municipality in grading and establishing its streets fails to provide for

surface drainage and blocks or casts unreasonble amounts of water on the private owner's property, to his immediate damage. Walters v. Marshalltown, 145 Iowa 457, 120 N.W. 1046, 26 L. R. A., N. S., 199; Hoffman v. Muscatine, 113 Iowa 332, 85 N.W. 17; Slatten v. Des Moines Valley R. Co., 29 Iowa 148, 154, 4 Am. Rep. 205; Cole v. Des Moines, 212 Iowa 1270, 1277, 1278, 232 N.W. 800, and cases cited; 38 Am. Jur., Negligence, section 162, pages 832, 833.

Such was not the case here, for there was no showing the increase from 1930 to 1950 did any damage to the property now owned by plaintiffs, and there is insufficient evidence to establish that it was unreasonable, substantial or excessive. No easement resulted during that period although the established system clearly existed for over ten years. It is also apparent that insufficient time has elapsed for the municipality to have acquired an easement since the 1951 or 1952 improvements. Actionable nuisance which did not exist prior to 1951 began thereafter.

██ V. Plaintiffs had the absolute right to bring their lots to grade. There was some contention that the grade established by the highway commission when U. S. Highway No. 30 was laid on Fourth Street did not amount to a legally established municipal grade, but such contention is without merit. The city agreed to establish the grade as proposed by the highway commission and approved of it by resolution. This cause is in equity and we will not hear the town claim violation of its agreement to pass an ordinance as a basis for its claim the grade was never established. Plaintiffs brought in fill, and for some seventy-five feet lengthwise brought their lots substantially to the existing grade of the street. This may be called the exercise of a right in abeyance, which unless lost by laches, estoppel, or by other legal means, remains until the owner desires to exercise it.

VI. It is unnecessary to fill to grade the entire lot in order to exercise one's right to prevent surface water from being emptied upon one's property. The correct rule is clearly set forth in Monarch Mfg. Co. v. Omaha, C. B. & S. Ry. Co., 127 Iowa 511, 514, 103 N.W. 493, 494:

"But to improve the lot in conformity to the grade does not require that the entire surface be raised to the same level as the street. It may better serve the purposes of the owner if portions,

such as the basement, are below grade. *To conform to the grade means no more than that the premises shall be so improved as to avoid any injuries incident to the grading of the street, and if, notwithstanding such improvement, they are injured through the negligence of the city or some one acting in its stead, there is no tenable ground upon which denial of recovery may be based.*" (Emphasis supplied.)

The fills of both plaintiff and intervenor comply with the requirement "to conform to the grade" and were sufficient improvements upon which to base this action.

VII. It is true such swales or depressions as are found upon plaintiffs' lands have been called watercourses. In Heinse v. Thorborg, 210 Iowa 435, 437, 230 N.W. 881, we said: "It is the rule of this state that a swale or depression through and over which surface water runs according to the laws of nature is a watercourse, even though this depression or swale has no well defined banks." Also see Hunt v. Smith, 238 Iowa 543, 28 N.W.2d 213, and its many citations. To the extent that this depression extended approximately 250 feet in length north and south across Fourth Street 100 or 120 feet wide, with an over-all drop to the rear of Lot 6 of 9 feet, five feet of which was south of graded Fourth Street, we must agree it was under the law a watercourse. However, this cannot mean that it could be used to drain other watercourses, and there was no showing that any part of the increased volume after 1950 would have reached this watercourse were it not for the system of ditches and culverts established by the town. The contrary clearly appears.

Defendant cites, as authority for the rule that such a watercourse cannot be filled, the case of Waverly v. Page, 105 Iowa 225, 229, 74 N.W. 938, 939, 40 L.R.A. 465. The court there held, where the city made substantial improvements of a permanent character to keep open the natural outlet for surface water from some 1500 acres flowing through the watercourse, it may maintain an action to enjoin the obstruction of such watercourse by the owner of the land through which it flows, especially where such diversion or obstruction may entail serious consequences on the city or people interested in the drained territory. The court therein recognized the rule announced in the Cedar Falls v. Hansen case, supra, and said:

"The defendant had placed a house over the depression, and was about to fill the lot to the level of the street, and thus make a permanent obstacle to the flow of water in the depression; and we held that he had the right to do so. That conclusion was based upon the rule that a city may bring its streets to grade; that by doing so, *it may turn surface water from its natural course,* and owners of lots below grade cannot complain, because of their right to protect themselves by bringing their lots to grade. The fact was also mentioned that the city had changed the course through which water naturally flowed over two of the lots of the defendant." (Emphasis supplied.)

Such a statement not only distinguishes the cases but reaffirms the rule in the Hansen case which is applicable to the facts in the case at bar. While we may doubt the justice of the Waverly case as a taking without compensation, it could well have been justified as a natural watercourse, undisturbed, except by city improvements and expenditures of bridges and walks which could estop the owner's interference thereafter. At any rate such a watercourse could not be compared with the swale naturally draining only two acres in the case at bar, and we find herein no basis of estoppel to prevent plaintiff's remedy. No serious consequences or even great expenditure would be required to construct another suitable watercourse for this water within property controlled by the town.

VIII. It must be conceded plaintiffs had no official permission and therefore no right to fill in the city street, i.e., from the sidewalk lot line out to the street shoulder. Nor did they have any right to self-help in closing the culvert and stopping the drain. Halsrud v. Brodale, 247 Iowa 273, 283, 72 N.W.2d 94. They must be enjoined from doing the latter for there is ample evidence of threats and acts of that nature, but as to the fill, the trial court's decree correctly provided that if required the plaintiffs must remove the part of the fill they placed in the street, or so much thereof as will interfere with the town's selected method of future disposal of the waters from the culvert involved. This was proper. The gift fill should not seriously disturb the town except for that part it may need to move to establish a ditch or storm sewer westward to Carpenter Street or some other naturally-inclined municipally-controlled watercourse. The plaintiffs

must of course restore the walk which they covered as agreed and, as the town is entitled to relief from further culvert stoppage by plaintiffs, the costs of this appeal must be equally divided between plaintiff and defendant. With the modification above mentioned, the case must be affirmed.—Modified and affirmed.

HAYS, C. J., and WENNERSTRUM, SMITH, THOMPSON, and PETERSON, JJ., concur.