CARL E. JOHNSON et ux., appellants, v. IOWA STATE HIGHWAY COMMISSION and CITY OF DES MOINES, appellees.

RICHARD P. KNIGHT et ux., appellants, v. IOWA STATE HIGHWAY COMMISSION and CITY OF DES MOINES, appellees.

GLENN LEROY SELBY et ux., appellants, v. IOWA STATE HIGHWAY COMMISSION and CITY OF DES MOINES, appellees.

No. 49639.

(Reported in 94 N.W.2d 773)

FEBRUARY 10, 1959.

Parrish, Guthrie, Colflesh & O'Brien, Maxwell A. O'Brien, of Des Moines, for plaintiffs-appellants.

Donald L. Beving, of Des Moines, and James Thompson and C. J. Lyman, both of Ames, for defendant-appellee, cross-appellant.

Robert J. Spayde and Robert G. Allbee, both of Des Moines, for City of Des Moines, appellee.

GARRETT, J.—In 1957 the highway commission started extensive improvements on Primary Highway No. 28, which, in Des Moines, is a city street known as Army Post Road. This street bounds the municipal airport on the south and intersects Fleur Drive which bounds the airport on the east. The plans for the project involved the widening and repavement of the highway and the condemnation of some land on the south side.

The plaintiffs Carl E. Johnson and Evelyne Johnson own a residence property adjoining this street on the south some 900 feet west of the intersection. Plaintiffs Glenn Leroy Selby and Joyce E. Selby own their home approximately 500 feet west of the Johnson property and the plaintiffs Richard P. Knight and Carmen R. Knight own a residence property adjoining the Selby property on the west.

In September 1957 the highway commission condemned and appropriated a strip of ground along the north side of said properties. In October 1957 plaintiffs filed their three separate petitions in two counts. Count I is the appeal from the award in the condemnation proceeding. Count II is in equity for an injunction to restrain the highway commission from certain alleged illegal acts, consisting principally of the unlawful diversion of surface water from its natural course and upon the properties of plaintiffs which are improved with modern dwellings, orchards, ornamental trees, shrubbery and beautiful lawns.

. The pleadings are not set out but the record states the substance of Count II thus: "That the defendant, highway commission, in taking the property for the construction, reconstruction and widening of the highway, plan and intend to deliberately, intentionally and unlawfully divert and change the natural course and flow of the surface water from the surrounding territory and to gather and collect the water and unlawfully divert it from its natural course by the use of tile, pipes, pavement, curbing and culverts, and to cast a large volume of surface water thus unlawfully diverted onto the plaintiffs' lawns and grounds in such manner that it will cause erosion, washing and cutting of gullies and ditches in the plaintiffs' front yard and side yard, defacing and permanently damaging the plaintiffs' property. That the taking was without due process of law, contrary to law, and deprives the plaintiffs of their property without due process of law. That in the taking defendant will turn the surface water from its natural channel and course onto the plaintiffs' land in violation of section 314.7, Code of Iowa 1954."

The defendant highway commission filed answers denying the material allegations of the several petitions and alleging that the plaintiffs' properties are below the grade established by the city. It also filed a cross-petition against the city of Des Moines to which the city filed its answer.

On October 17, 1957, plaintiffs filed a motion for hearing on the equitable issues raised in Count II of their petitions stating that the defendant highway commission, immediately after the condemnation and not waiting for the 30-day period to expire, took possession of the condemned property and was proceeding to work thereon, and if not enjoined would arbitrarily damage the plaintiffs' property to their irreparable injury.

The court sustained the motion, and trial was had on January 21 and 22, 1958, the three cases being consolidated for the purposes of the trial. On March 15, 1958, the court filed its findings of fact, conclusions of law, summary and judgment and decree in each case.

The evidence consisted, in part, of the plans of the highway commission for this project, identified as Exhibit A, pages 13 and 14 being the relevant parts of the Exhibit; Exhibit B, the plans followed in the construction of the original concrete paving

on this road in 1923, sheet No. 7, being relevant; Exhibits H and M, being plats showing most importantly the drainage of the area affecting the properties of plaintiffs; photographs showing the appearance of the properties before the condemnations and two photographs showing a newly constructed culvert at the Selby and Knight lots.

As stated, this road has been paved since 1923. There is no radical or important change in the general contour or slope of the paved surface from what it has been since it was originally paved.

Defendant highway commission claims the project, when completed, will not cause sufficient water to flow upon plaintiffs' places to do appreciable damage. Plaintiffs' Exhibits H and M, being plats showing relative elevation, as identified and explained by the qualified engineers who drew them, tend to indicate otherwise.

Exhibit M shows the total drainage area involved, this area being the highway and a portion of the municipal airport. It is not disputed that the surface water from about ten acres of this area is not in any way diverted from its natural course.

Plaintiffs claim the water which falls on the five acres at the southeast corner of the airport, known as area B, in so far as not absorbed by the ground and by evaporation, will be diverted from its natural course through artificial channels to and upon plaintiffs' properties to their irreparable injury. The cause of this diversion, as they claim, is the reconstructed pavement and certain storm sewers which are fed from the intakes on the pavement.

An engineer, Frederick H. Herwehe, testified he prepared Exhibit H and that it shows the general topography of the watershed now leading to the valley going through the Johnson and other adjacent properties along the south side of the highway. He stated his survey shows the additional drainage that is imposed on the Johnson property by the change in the right-of-way; that four acres of additional drainage are added to the original watershed and that, in his judgment, the water accumulated at the Johnson culvert will cause serious erosion through the Johnson property. He said, "I have testified that if

there was no highway the drainage would flow directly across the road. That because there is a highway which drains the way this does it goes through the Johnson culvert."

E. F. Behrens, an engineer, testified the new pavement, with curbing as planned, will cause the drainage from an additional 5.55 acres to go through the box culvert now constructed at the Selby and Knight properties and will cause ditching and erosion.

The trial court ordered three intakes on the south side of the pavement closed and refused to order closed the two intakes on the north side.

The dispute here narrows down to the question of keeping open or closing certain intakes on the pavement. Appellants state it thus: "The only question on this appeal is whether the trial court should have granted adequate relief to the plaintiffs by ordering the defendant Commission to close two other additional intakes and drains along the highway."

The highway commission, cross-appellant, states its propositions relied upon for reversal as follows:

"A. With respect to the Johnson case, the trial court improperly decreed that the Iowa State Highway Commission should be required to close the intake located on the south side of Highway No. 28 at a point just west of the intersection of Fleur Drive and Highway No. 28 near the northwest corner of the property shown on the Exhibits to be in the name of Glen R. Jones; and the trial court improperly decreed that the intake located at a point on the south side of Highway No. 28 at or near the northeast corner of the property shown in the Exhibits to be in the name of A. F. DenBoer and the lateral sewer leading therefrom to the main sewer along the north edge of the pavement should be closed.

"B. With respect to the Knight and Selby cases, the trial court improperly decreed that the intake located at a point on the south line of Highway No. 28 just north of the east part of the Selby property about 75 to 100 feet west of the driveway to the Selby property along with the lateral storm sewer leading therefrom to the main sewer on the north side of Highway No. 28 should be closed."

The trial court in its summary stated: "As the court under-

stands the drainage to have been since 1923 or 1924 the excess waters in area B must have moved toward the west, insofar as they did not evaporate or soak into the ground. This would still be true. Some of the waters from area B would drain into the intake at the point across the highway from Wakonda Road. Some of the waters drained from area B would move westward and eventually go into the intake on the north side of the highway and across from the eastern part of the Selby property. But the court concludes that this would not be substantially different than has been the case for many, many years. What it has come to is that the defendant Highway Commission, in its effort to carry out its duty to drain the surface water from the public road in its natural channel, has concluded that it should establish these intakes. The court cannot come to the conclusion that this has been or will be a violation of the Commission's statutory duty."

The trial court concluded that "the defendant in the construction, reconstruction and widening of said Army Post Road or Primary Road No. 28, and particularly in the construction of the drainage system, will turn the natural drainage of some of the surface water, to the injury of the plaintiffs, and will thereby be violating the defendants' statutory duty to drain the said surface water from the public road in its natural channel", and on the basis of such conclusion ordered three intakes on the south side of the pavement closed and denied plaintiffs further relief.

There was no evidence that any damage had been done by the alleged interference with the natural flow of the surface water. There was evidence that a concrete culvert, two feet square, was constructed to carry the surface water accumulating at that point upon the Selby and Knight properties, and witnesses expressed the opinion ditches and erosion will appear where none has appeared before.

The trial court held, and we believe correctly, that under the evidence some additional surface water will be cast upon the plaintiffs' lots but that it will not be in sufficient amounts to justify greater relief than has been granted by the trial court. It appears to be customary and in harmony with good engineer-

ing practice and definitely in the interests of the traveling public to place intakes and spillways where they will quickly take the accumulations of water off the pavement.

The city has established no grade for this street. The most it has done in this respect was to pass a resolution stating that the council would take action "to legally establish the grade lines of the street in accordance with and as shown by the project plans, and to cause any damage accruing therefrom to be determined and paid pursuant to Section 389.22 et seq., Code of Iowa, 1954." The lots of the plaintiffs were not brought to the grade of the reconstructed and improved street.

I. Cities and towns are given authority by statute to contract with the highway commission for the improvement of extensions of the primary road system within their borders. Sections 313.21, 313.22 and 313.23, Code of Iowa, 1958.

Section 314.7 provides they shall not "turn the natural drainage of the surface water to the injury of adjoining owners", and makes it their duty "to use strict diligence in draining the surface water from the public road in its natural channel." This section has not been construed strictly to the last drop of water but has been given a liberal construction which permits the improvement of streets and highways in harmony with the public interest. Woods v. Incorporated Town of State Centre, 249 Iowa 38, 45, 85 N.W.2d 519, 524; Cole v. City of Des Moines, 212 Iowa 1270, 232 N.W. 800; Lessenger v. City of Harlan, 184 Iowa 172, 168 N.W. 803, 5 A. L. R. 1523.

It is said in Woods v. Incorporated Town of State Centre, supra, "It may be said then that when the municipality is engaged in lawful work, and acts prudently, on its own ground or streets, and it happens that from it some surface water is changed in its course and runs onto a lot not yet brought to grade in substantially increased quantity, it is not an actionable cause, but is damnum absque injuria. Cech v. City of Cedar Rapids, supra. If the amount is unreasonable or does actual damage, the rule would of course be otherwise. Such is the law in Iowa, and the reasoning is this: when a moderate overflow comes about from the rightful acts of the municipality and as a result of the topography of the land, no private rights are yet invaded."

528

In Cole v. City of Des Moines, supra, at pages 1272 and 1274 of 212 Iowa, we said:

"And while it is said that the city can no more collect surface water and precipitate it upon the land of an individual than an individual owner can, nevertheless, the courts have recognized the right of the city to do this to a limited degree, as an incident to the power and duty of improving its streets. * * * when it is conclusively shown by the record that this lot overflowed before the improvements were made, and that the reason for the overflow was that it was in the line of natural drainage, the city will not be held liable because, in the improvement of its street, a part of the surface water which formerly did not pass over plaintiff's land, now flows down the street and gutters of the improved street and is cast in a natural waterway, running across the street, to an increased extent and by an accelerated flow. See, also, Hinkle v. Chicago, R. I. & P. R. Co., 208 Iowa 1366; Allen v. Berkheimer, 194 Iowa 871; Tennigkeit v. Ferguson, 192 Iowa 841; Maben v. Olson, 187 Iowa 1060."

See also Lessenger v. City of Harlan, 184 Iowa 172, 168 N.W. 803, 5 A. L. R. 1523; Morrow v. Harrison County, 245 Iowa 725, 64 N.W.2d 52.

Nothing is claimed by any party as against the city of Des Moines and no judgment or decree was entered against it.

The sole question for determination here is, Should the several decrees of the trial court closing the three intakes on the south side of the pavement and refusing to order closed the two intakes on the north side thereof be sustained?

We conclude the judgments and decrees of the trial court are sustained by the record and should be affirmed.—Affirmed.

All JUSTICES concur.